Filed 8/18/20

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| THE PEOPLE, | B297183 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA427590-03) |
| v. | |
| ALBERTO OCHOA, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, George G. Lomeli, Judge.  Convictions are affirmed and matter is remanded for resentencing.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Zee Rodriguez and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

In *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*) the United States Supreme Court held that mandatory sentencing schemes imposing prison terms of life without parole on juvenile offenders violate the Eighth Amendment because they fail to consider youth-related mitigating factors that may diminish a juvenile's culpability and suggest a capacity for reform.

Applying the principles of *Miller* in *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1361 (*Gutierrez*), the California Supreme Court held Penal Code section 190.5, subdivision (b),[1] which prescribes a sentence of life without parole or a term of 25 years to life for a 16- or 17-year-old defendant found guilty of special circumstances murder, "authorizes, and indeed requires" consideration of the youth-related mitigating factors identified in *Miller* before imposing life without parole on a juvenile homicide offender: "Under section 190.5(b), a sentencing court must consider the aggravating and mitigating factors enumerated in Penal Code section 190.3 and the California Rules of Court. [Citation.] Section 190.5(b) does not expressly direct the sentencing court to consider those factors, but 'since all discretionary authority is contextual, those factors that direct similar sentencing decisions are relevant, including "the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial."'" (*Gutierrez*, at p. 1387.)

Legislation initially enacted shortly before the decision in *Gutierrez* now provides for youth offender parole hearings at

---

[1] Statutory references are to this code unless otherwise stated.

statutorily prescribed points, including with the passage of Senate Bill No. 394 (2017-2018 Reg. Sess.) for youth offenders sentenced to life without parole, effectively mooting Eighth Amendment challenges to sentences of life without parole or the functional equivalent of life without parole. (See *People v. Franklin* (2016) 63 Cal.4th 261.) Section 190.3 requiring the sentencing court to consider the aggravating and mitigating factors detailed in *Gutierrez* before imposing the harsher sentence on a youth offender under section 190.5, subdivision (b), however, remains in place and unchanged.

Here, Albert Ochoa, sentenced to life without parole for the murder of Xinran Ji during an attempted robbery committed when Ochoa was 17 years old, contends the trial court abused its discretion by failing to heed *Gutierrez* and consider youth-related mitigating factors at sentencing. Because the record does not indicate the trial court considered those factors before imposing life without parole and we cannot presume the court understood its duty to do so notwithstanding the then-recent passage of Senate Bill No. 394, we agree and remand the matter for resentencing.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Amended Information*

An amended information filed May 15, 2015 charged Ochoa with murder (§ 187), second degree robbery of Claudia Rocha (§ 211), attempted second degree robbery of Jesus Ontiveros (§§ 664, 211) and assault with a deadly weapon on Ontiveros (§ 245, subd. (a)(1)). The information specially alleged Ochoa had committed the murder during an attempted robbery (§ 190.2, subd. (a)(17)); had personally used a deadly or dangerous weapon, a baseball bat, during the commission of the murder of Ji,

3

robbery of Rocha and attempted robbery of Ontiveros (§ 12022, subd. (b)(1); and had inflicted great bodily injury on Ontiveros during the aggravated assault (§ 12022.7, subd. (a)). Ochoa pleaded not guilty and denied the special allegations.

2. *Remand for a Transfer Hearing in Juvenile Court, and Return of the Matter to Adult Criminal Court*

Prior to trial Ochoa successfully moved, without objection, to remand his case to juvenile court for a hearing pursuant to then-newly adopted Proposition 57, the Public Safety and Rehabilitation Act of 2016, which repealed prior statutory provisions that had permitted direct filing in adult criminal court of certain cases involving juveniles. Following a hearing, the juvenile court found Ochoa's case should not be retained in juvenile court and transferred the matter back to adult criminal court.

3. *The Trial*

According to the evidence presented at trial, Ochoa, along with his companions Andrew Garcia, Alejandra Guerrero and Jonathan Del Carmen, decided to go "flocking," a term Ochoa explained to police meant "robbing someone." They found Ji, a 24-year-old USC graduate student, walking home to his apartment from a study session just after midnight. In a particularly brutal attack, Ochoa and Garcia beat Ji with a metal baseball bat when Ji refused to relinquish his backpack. Guerrero hit Ji with a wrench. The beating crushed Ji's skull. After his attackers left, Ji, bloodied and severely injured, managed to return to his apartment, where he died a short time later. The attack was captured on surveillance cameras, and the footage was played for the jury.

After the attack on Ji, Ochoa and his companions drove to the beach, where they encountered Rocha and Ontiveros and demanded the couple's possessions. Rocha complied. Ontiveros stepped in front of Rocha to protect her. After Ontiveros lost his footing and fell to the ground, Ochoa swung the baseball bat at Ontiveros's head. Ontiveros blocked the blow with his arm. Ontiveros managed to escape his attackers and flag down police officers on patrol. Ochoa and his companions initially chased Ontiveros but fled the scene when they saw him talking to the police. They were arrested a short time later.

4. *The Verdict and Sentence*

The jury found Ochoa guilty on all counts. It specifically found Ochoa was "the actual killer" of Ji and found true all special allegations relating to the murder charge. The jury received no instructions, and made no findings, as to the special allegations relating to the other counts.

At sentencing the court stated, "with regard to count 1, murder in the first degree, coupled with the special circumstance alleged under [section] 190.2(a)(17), the defendant shall receive the term of life without the possibility of parole, plus one year for use of a deadly weapon pursuant to Penal Code section 12022(b)(1)." Neither the People nor Ochoa addressed in sentencing memoranda or at the hearing the court's discretion to impose a term of 25 years to life pursuant to section 190.5, subdivision (b); and the court did not explicitly address that alternative or any youth-related mitigating factors when imposing life without parole.

As to the robbery and aggravated assault counts, the court imposed consecutive terms of three years for the robbery of Rocha, eight months for the attempted robbery of Ontiveros and

one year for the assault with a deadly weapon on Ontiveros. In selecting consecutive sentences, the court expressly found the crimes involved great violence, great bodily injury or the threat of great bodily injury, a high degree of cruelty and particularly vulnerable victims.[2]

Following imposition of sentence the court acknowledged, "[d]ue to [Ochoa's] age at the time of the commission of the charges herein, he is entitled to a hearing for the limited purpose of affording him the opportunity to make a record of youth-related mitigating factors for the parole board's future consideration under the dictates of *People v. Franklin*, [*supra*,] 63 Cal.4th 261. The court has also considered the consequences and the applicability of Penal Code section 3051 and Senate Bill 394 regarding juveniles receiving a life without the possibility of parole sentencing term. All counsel have stipulated to the submission of a documentary packet addressing the youth-related mitigating factors addressed in the defendant's juvenile proceeding related to this case to be considered by a parole board at the defendant's future youth offender parole hearing. This documentary packet shall be jointly submitted by all counsel to serve as a record addressing the youth-related factors in lieu of a hearing for the parole board's future consideration under *Franklin*."[3]

---

[2]     As for mitigation the court observed, "[T]he defendant has no and/or a minimal criminal history as a circumstance in mitigation."

[3]     Recognizing that assembling information on youth-related mitigating factors is a task more easily accomplished at the time of sentencing rather than decades later at a parole hearing, the

**DISCUSSION**

1. *Life-without-parole Sentencing for Youth Offenders*

In *Graham v. Florida* (2010) 560 U.S. 48, 74 (*Graham*) the United States Supreme Court, emphasizing a juvenile offender's "capacity for change and limited moral culpability," held it violated the Eighth Amendment's prohibition of cruel and unusual punishment to impose life without parole on a juvenile offender who had not committed homicide. Two years later in *Miller*, *supra*, 567 U.S. at pages 477 to 478, the Supreme Court extended the reasoning of *Graham* to hold it also violated the Eighth Amendment to impose a mandatory life without parole sentence on a juvenile convicted of murder because that mandatory penalty "precludes consideration of [the juvenile's] chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to

*Franklin* Court held that a defendant must be permitted at the time of sentencing to make a record of those factors (*Franklin*, *supra*, 63 Cal.4th at pp. 283-284), a proceeding that has since become known as a *Franklin* hearing. (See *In re Cook* (2019) 7 Cal.5th 439, 459.)

assist his own attorneys." (*Miller*, at pp. 477-478.)  A sentence of life without parole on a juvenile that fails to take these youth-related mitigating factors into account, the Court held, violates the Eighth Amendment prohibition on cruel and unusual punishment.  (*Ibid.*; accord*, Montgomery v. Louisiana* (2016) __ U.S. __ [136 S.Ct. 718, 733].)  Shortly after *Miller*, the California Supreme Court held in *People v. Caballero* (2012) 55 Cal.4th 262, 268 (*Caballero*) that the Eighth Amendment analysis in *Graham* also applied to sentences that are the "functional equivalent of a life without parole sentence," including Caballero's term of 110 years to life.

To bring juvenile sentencing in California into conformity with *Graham*, *Miller* and *Caballero*, the Legislature enacted Senate Bill No. 260 (2013-2014 Reg. Sess.), effective January 1, 2014, adding sections 3051 and 4801, subdivision (c), to the Penal Code.  Those provisions, as subsequently amended, require the Board of Parole Hearings (Board), with certain limited exceptions, to conduct a youth offender parole hearing no later than a juvenile offender's 25th year of incarceration (and at earlier points depending on the offender's "controlling offense") (§ 3051, subd. (b)) and, when considering parole eligibility for these youth offenders, to "give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity" (§ 4801, subd. (c)).  (See *Montgomery v. Louisiana, supra,* 136 S.Ct. at p. 736 ["[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them"].)

Senate Bill No. 260 did not address juveniles sentenced to life without parole, nor did it revise section 190.5, subdivision (b),

which has, since its adoption by voter initiative in the 1990 general election, provided the trial court with two sentencing options for 16- and 17-year-olds convicted of special circumstance murder:  life without parole or 25 years to life.[4]

In *Gutierrez*, *supra,* 58 Cal.4th 1354 the Supreme Court addressed section 190.5, subdivision (b)'s, authorization of a life without parole sentence on a juvenile convicted of special circumstance murder.[5]  The Court rejected the People's contention the discretionary nature of section 190.5, subdivision (b), materially distinguished it from the mandatory statutory scheme addressed in *Miller*, and disapproved prior court of appeal decisions interpreting the provision to impose a rebuttable presumption of life without parole, explaining such a construction raised serious Eighth Amendment concerns under *Miller*.  (*Gutierrez*, at p. 1384 [any presumption of life without parole on a juvenile, even a rebuttable one, contravened *Miller*'s mandate that this sentence be reserved for the ""'rare juvenile offender whose crime reflects irreparable corruption'""].)

---

[4]    Section 190.5, subdivision (b), provides, "The penalty for a defendant found guilty of murder in the first degree, in any case in which one or more special circumstances enumerated in Section 190.2 or 190.25 has been found to be true under Section 190.4, who was 16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life."

[5]    Section 190.5, subdivision (a), prohibits imposition of the death penalty if the defendant was under the age of 18 at the time of the commission of the crime.

The *Gutierrez* Court also rejected the defendant's contention that, even without a presumption, section 190.5, subdivision (b), was unconstitutional because it did not require the court to consider the youth-related mitigating factors described in *Miller* before imposing life without parole.  Not so, the Court held.  Before imposing sentence under section 190.5, subdivision (b), "[A] sentencing court must consider the aggravating and mitigating factors enumerated in Penal Code section 190.3 and the California Rules of Court."  (*Gutierrez*, *supra*, 58 Cal.4th at p. 1387.)  Section 190.3, subdivision (i)'s, requirement that the sentencing court consider "[t]he age of the defendant at the time of the crime," the Court explained, necessarily encompasses "'any age-related matter suggested by the evidence or by common experience or morality that might reasonably inform the choice of penalty.'"  (*Gutierrez,* at p. 1388.)  Thus, the Court held, section 190.5, subdivision (b), construed together with section 190.3, subdivision (i), and the California Rules of Court, requires, as a matter of statutory construction, the sentencing court to "take into account any mitigated relevance of 'age and the wealth of characteristics and circumstances attendant to it,' as *Miller* requires."  (*Gutierrez*, at p. 1388; see Cal. Rules of Court, rule 4.423 [mitigating factors include "factors statutorily declared to be a circumstance in mitigation or which reasonably relate to the defendant or the circumstances under which the crime was committed"].)

As discussed, at the time *Gutierrez* was decided in 2014, California did not require a mandatory youth offender parole hearing for juveniles convicted of special circumstance murder and sentenced to life without parole.  However, during its 2016-2017 session the Legislature passed Senate Bill No. 394,

extending the availability of a mandatory parole hearing to juveniles sentenced to life without parole. With the addition of section 3051, subdivision (b)(4), a juvenile sentenced to life without parole is now entitled to a youth offender parole hearing during that offender's 25th year of incarceration.[6] By affording those individuals a meaningful opportunity for release, the Legislature has effectively mooted any claim that imposition of life without parole on a juvenile offender violates the Eighth Amendment. (See *Franklin, supra,* 63 Cal.4th at pp. 279-280 [finding *Miller* issues moot with regard to defendants subject to section 3051, subdivision (b)]; *In re Kirchner* (2017) 2 Cal.5th 1040, 1054 [statute that provides juvenile offenders sentenced to life terms with parole hearings no later than their 25th year of incarceration is an example of adequate response to *Miller*]; see generally *In re Arroyo* (2019) 37 Cal.App.5th 727, 732 [courts are "bound to '"decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it"'"].)

    2. *The Sentencing Court Is Statutorily Required To Consider Youth-related Mitigating Factors Before Imposing Life Without Parole*

Ochoa acknowledges the availability of a youth offender parole hearing in his 25th year of incarceration pursuant to

---

[6] Similarly, an individual convicted of a controlling offense committed when he or she was 25 years old or younger for which the sentence is an indeterminate term of 25 years to life is entitled to a youth offender parole hearing during his or her 25th year of incarceration. (§ 3051, subd. (b)(3).)

section 3051, subdivision (b)(4), has mooted any Eighth Amendment challenge to his sentence.  However, citing *Gutierrez, supra,* 58 Cal.4th 1354, he contends section 190.5, subdivision (b), requires, as a matter of statutory construction, consideration of the youth-related mitigating factors at the time of sentencing, and the court abused its discretion when it failed to consider them.

The People respond the *Gutierrez* Court interpreted section 190.5, subdivision (b), as it did to preserve that statute's constitutionality under *Miller*.  (See *Gutierrez, supra,* 58 Cal.4th at p. 1373 [when a statute is capable of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, "the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety"].)  Because the Legislature has by virtue of section 3051, subdivision (b)(4), transformed a life without parole sentence imposed under section 190.5, subdivision (b), to one allowing for a meaningful opportunity for release, the People argue the *Gutierrez* Court's rationale for such an interpretation of sections 190.5, subdivision (b), and 190.3, subdivision (i), no longer exists.[7]

We do not believe the *Gutierrez* Court's statutory interpretation of section 190.5, subdivision (b), may be so easily

_____

[7]     As the Attorney General explains it, "The current statutory scheme still gives trial courts discretion whether to impose juvenile [life without parole] sentences under section 190.5, but it specifically satisfies *Miller* by incorporating those factors into later youth offender parole hearings; therefore, the constitutional-avoidance holding in *Gutierrez* is now inapplicable."

discarded.  While unquestionably mindful of, and motivated by, the *Miller* Court's constitutional-based concern for the fundamental differences between juvenile and adult minds, the *Gutierrez* holding was predicated on the language of section 190.3 and a history of court decisions articulating the factors properly considered by a sentencing court as a matter of state law. (See *Gutierrez, supra*, 58 Cal.4th at p. 1388 [*People v. Lucky* (1988) 45 Cal.3d 259, 302 "did not involve a juvenile offender, but as relevant here, *Lucky* confirms that section 190.3, subdivision (i) provides a basis for the court to consider that "'youth is more than a chronological fact'""'].)  Moreover, when extending mandatory youth offender parole hearings to individuals sentenced to life without parole, the Legislature in Senate Bill No. 394 did not amend section 190.5, subdivision (b)'s sentencing alternatives.  By thus preserving a distinction between life without parole and a term of 25 years to life for offenders subject to section 190.5, subdivision (b), the Legislature signaled its understanding a material difference between those two sentences remains, notwithstanding the availability of a youth offender parole hearing during the 25th year of incarceration under either alternative.  (See generally *People v. Buycks* (2018) 5 Cal.5th 857, 880 [principles of statutory interpretation require presumption that Legislature was aware of existing laws and judicial construction of them when it passed new law]; *People v. Valencia* (2017) 3 Cal.5th 347, 358 [fundamental rules of statutory construction require that every part of a statute be presumed to have some effect; significance should be given, if possible to every word, and a construction that renders a word surplusage should be avoided].)

Ochoa points to significant differences in the treatment of offenders sentenced to life without parole and those serving an indeterminate term of 25 years to life, such as prisoner intake categorization, housing assignments, custody assignments and eligibility for rehabilitation programs. (See Cal. Code Regs., tit. 15, §§ 3075-3077, 3078.3, 3269, 3375, 3375.1; see also *People v. Ellison* (2003) 111 Cal.App.4th 1360, 1368-1369 [challenge to completed sentence not moot where adverse collateral consequences may arise].)[8] The People respond that such an argument is speculative, insisting it is not clear that individuals afforded youth offender parole hearings under section 3051, subdivision (b)(4), will continue to be treated as a practical matter similarly to adult offenders serving life without parole sentences.

We need not resolve this dispute nor conjecture as to the real world consequences of a life without parole sentence being served by a juvenile despite the availability of a youth offender parole hearing. It is enough that the Legislature has maintained section 190.5, subdivision (b)'s alternative sentencing scheme for 16- and 17-year-old offenders. As long as that choice exists, the statutory requirement that youth-related mitigating factors must be considered at sentencing, as the *Gutierrez* Court instructed, remains intact.

---

[8] The nature of the youth offender parole hearing itself, as well as the likelihood of, and timing for, future parole hearings, might also be different for youths sentenced to life without parole and those sentenced to an indeterminate term of 25 years to life. (See generally § 3041.5, subd. (b)(3); Cal. Code Regs., tit. 15, §§ 2443, subd. (c), 2445, subd. (e).)

### 3. *Where the Record Is Ambiguous, the Trial Court's Understanding of Its Discretion Cannot Be Presumed*

The People alternatively argue the trial court did consider the youth-related mitigating factors at sentencing or, more precisely, that we must presume it did so on this "silent record." (See *People v. Lee* (2017) 16 Cal.App.5th 861, 867 ["if the record is silent" on the court's awareness of its discretionary authority in sentencing, we must presume the court understood the scope of its discretion and affirm]; *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527 ["in light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, [the reviewing court] cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of [its] discretion"].)

The record, however, is not silent. At best, it is ambiguous. On the one hand, although the court did not mention youth-related factors, neither *Gutierrez* nor section 190.5, subdivision (b), requires the court to make findings on the record when imposing sentence under section 190.5, subdivision (b). The court's acceptance of stipulated documentary evidence directed to youth-related mitigating factors in lieu of a *Franklin* hearing was also appropriate. (See *People v. Sepulveda* (2020) 47 Cal.App.5th 291, 300-301 [trial court's acceptance, pursuant to parties' agreement, of relevant information of youth-related mitigating factors in lieu of a *Franklin* hearing did not violate due process].)

On the other hand, information concerning youth-related mitigating factors was submitted to, and accepted by, the trial court only after the court had already imposed sentence pursuant

15

to section 190.5, subdivision (b).  In directing its attention to that evidence, the court stated it "ha[d] considered the consequences" of Senate Bill No. 394 (§ 3051, subd. (b)(4)) and was admitting pursuant to the parties' stipulation the evidentiary packet addressing those factors for the parole board's "future consideration."  The transcript of proceedings suggests the court erroneously believed, just as the People have argued in this appeal, that section 3051, subdivision (b)(4), had eliminated (or at the very least mooted) the statutory requirement to consider youth-related mitigating factors at the time of sentencing.  While we do not fault the trial court for this misunderstanding—neither the People nor defense counsel suggested otherwise— "'[d]efendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.'" (*Gutierrez*, *supra*, 58 Cal.4th at p. 1391; accord, *People v. Morrison* (2019) 34 Cal.App.5th 217, 224.)

Accordingly, when, as here, the record is at the very least ambiguous as to whether the court understood its obligation to consider youth-related mitigating factors at sentencing before making the discretionary sentencing decision required by Section 190.5, subdivision (b), remand is appropriate.  (See *People v. Lua* (2017) 10 Cal.App.5th 1004, 1021 ["[W]e cannot say that it is clear that the trial court recognized it had discretion to strike one or more of defendant's [Health & Safety Code] section 11370.2 enhancements, and expressly declined to do so [citations][,] [n]or is the record silent on the issue, justifying a

presumption in favor of the judgment. [Citations.] We do not agree with the defendant's argument that the record conclusively establishes that the trial court misunderstood the scope of its discretion . . . , but we do find that some of the trial court's comments during sentencing raise serious doubts in that regard. In the face of such an ambiguous record, it is appropriate to remand to the trial court to consider the matter under the correct standard, to the extent it has not already done so"]; *People v. Morrison*, *supra*, 34 Cal.App.5th at p. 224 [same].)[9]

### 4. *Ochoa's Sentence for Aggravated Assault on Ontiveros Should Have Been Stayed Under Section 654*

Ochoa argues section 654 prohibits punishment for both the attempted robbery and aggravated assault of Ontiveros. (See § 654, subd. (a) ["[a]n act or omission that is punishable in

---

[9] The question what, if any, findings are required by the sentencing court upon consideration of youth-related mitigating factors for Eighth Amendment purposes is currently pending in the United States Supreme Court. (See *Jones v. Mississippi* (Miss.App. 2017) 285 So.3d 626, cert. granted Mar. 9 2020, __ U.S. __ [140 S.Ct. 1293, 206 L.Ed.2d 374], [raising question whether *Montgomery v. Louisiana, supra,* 136 S.Ct. at page 733 requires trial court to find juvenile defendant incapable of rehabilitation or that the juvenile's crime reflected "irreparable corruption" before it may constitutionally impose life without parole on a juvenile].) As explained, any Eighth Amendment argument in the case at bar has been mooted by section 3051, subdivision (b)(4). Nonetheless, without predicting how the Supreme Court will decide the question presented in *Jones*, it should be obvious on-the-record consideration of youth-related mitigating factors at sentencing would eliminate any need to make assumptions from a silent record on a matter of such serious import.

17

different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision"]; *People v. Rodriguez* (2009) 47 Cal.4th 501, 507 [section 654 applies not only where there is one act, but also where a course of conduct violated more than one statute; if all offenses were incident to one objective, the defendant can be punished for any one of such offenses but not more than one].)

The People concede, and we agree, the record establishes the attempted robbery and aggravated assault of Ontiveros comprised a single course of conduct with a single objective. Here, count 4 (assault with a deadly weapon) provides for the longer term of imprisonment. Accordingly, the sentence on count 3 (attempted robbery) should have been stayed pursuant to section 654.[10]

---

[10] The abstract of judgment erroneously identifies the attempted robbery in count 3 as both a serious and a violent felony. As properly alleged in the amended information, the attempted robbery is a serious felony within the meaning of section 1192.7, subdivision (c)(19) and (c)(39); it is not a violent felony under section 667.5, subdivision (c). Because our reversal and remand for resentencing will vacate the current abstract of judgment, the error is now moot.

## DISPOSITION

Ochoa's convictions are affirmed. The matter is remanded for resentencing. At resentencing the court must consider youth-related mitigating factors in deciding whether to impose life without parole under section 190.5, subdivision (b).


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.