Filed 9/21/21  P. v. Milazo CA4/1
Opinion following transfer from Supreme Court

OPINION AFTER TRANSFER FROM THE CALIFORNIA SUPREME
COURT

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARK MILAZO,<br><br>    Defendant and Appellant. | D074159<br><br><br><br>(Super. Ct. No. SCE360034) |

APPEAL from a judgment of the Superior Court of San Diego County,
Theodore M. Weathers, Judge.  Affirmed in part; and reversed in part, with
instructions.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal,
for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters,
Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney
General, Steve Oetting and Paige B. Hazard, Deputy Attorneys General, for
Plaintiff and Respondent.

To suggest that this case has a complicated—or, as the People say, a "convoluted"—procedural history would be an understatement. It involves the well-meaning, but ineffective, attempts by two separate branches of the same court to coordinate various criminal actions involving defendant Mark Milazo. In one such branch, at least seven different judges presided over his cases at various times. Adding to the confusion was defendant's representation by multiple court-appointed defense attorneys, who at times provided incorrect information[1] to the court regarding the ruling or rulings of a judge from the same, or another, branch, in connection with the cases pending against defendant.[2]

This case began in late April 2016, when charges were filed against defendant in the East County branch of the San Diego County Superior Court (East County), case No. SCE360034 (hereinafter, 0034), for possession of methamphetamine by a registered sex offender. (Health & Saf. Code, § 11377, subd. (a); Pen. Code,[3] §§ 290, subd. (c), 667, subds. (b)-(i), 1170.12 & 667, subd. (e)(2)(C)(iv).) In October 2016 defendant pled guilty in case 0034

_____

[1] There is no evidence in the record to support a finding that defense counsel purposely provided misinformation to the court. Instead, it appears that such misinformation likely was the result of the complex procedural history of this case, as discussed *post*.

[2] The reporter's transcript in this case is comprised of the transcript of defendant's initial plea, the court's revocation of probation about a year and a half later, and his sentencing shortly thereafter, *plus* about *33* additional hearings in that time-span which were included as a result of defendant's two motions to augment and a motion to supplement. The clerk's transcript likewise was the subject of a motion to augment and a motion to supplement by defendant.

[3] Unless otherwise indicated, all further statutory references are to the Penal Code.

and admitted that his 1996 prior convictions for committing lewd acts with force upon a child under the age of 14 years (§ 288, subds. (a) & (b)) qualified as a strike conviction (§§ 667, subds. (b)-(i) & 1170.12), and that he had two prison prior convictions (§ 667.5, subd. (b)). The East County court sentenced defendant in case 0034 to five years in prison, the upper term of three years plus two years for each of the one-year prison prior enhancements, but stayed execution of the sentence pending his successful completion of three years of probation. However, the court warned defendant that it would revoke his probation and impose the five-year prison term if he were convicted of a felony offense or any serious misdemeanor.

In late December 2016, new charges were filed against defendant in the South County branch of the San Diego County Superior Court (South County), case No. SCS291034 (hereinafter, 1034), for felony possession of a controlled substance (methamphetamine) by a sex offender (Health & Saf. Code, § 11377, subd. (a); § 290, subd. (c), count 1); and for misdemeanor possession of narcotic paraphernalia (Health & Saf. Code, § 11364, count 2).

In early January 2017, defendant pleaded guilty in case 1034 to count 1. Unaware that defendant was on probation in case 0034 pending in East County, the South County court indicated that it would likely sentence defendant to probation in case 1034 as a result of his plea. However, in early February the South County court in case 1034 refused to impose the indicated sentence after learning of defendant's probation in East County case 0034. Ultimately, case 1034 was dismissed and refiled in South County under a new case number. Defendant also was charged with a new criminal matter in that same branch.

Over about the next year and a half, the People sought execution of the sentence in case 0034 while defendant sought to avoid prison. Finally, on

April 26, 2018, the South County court formally revoked defendant's probation in case 0034, and on May 30 it imposed the five-year prison term that had been stayed by the East County court. On the People's motion, the court dismissed the remaining South County cases pending against defendant.

On appeal, defendant initially claimed that he was denied conflict-free counsel as a result of what he maintained were inconsistent orders by separate South County judges; that a South County judge lacked authority to revoke his probation and sentence him to prison on transferred case 0034 when another South County judge had refused to do so after repeatedly being misinformed by defense counsel regarding the status of case 0034; that imposition of one of his two, one-year prison prior enhancements under newly amended section 667.5, subdivision (b), should be stricken because it did not involve a sexually violent offense; that he, in any event, is entitled to pretrial diversion under section 1001.36; and that his due process rights were violated as a result of the court's failure to consider his ability to pay the fines, fees, and assessments imposed at his sentencing.

On June 22, 2020, we filed our opinion rejecting each of these claims and affirmed the judgment. On September 9, 2020, the Supreme Court granted defendant's petition for review, and ordered briefing deferred pending its decision in *People v. Esquivel* (S262551), which presented the following issue: Is the judgment in a criminal case considered final for purposes of applying a later ameliorative change in the law when probation is granted and execution of sentence is suspended, or only upon revocation of probation when the suspended sentence is ordered into effect?

On June 17, 2021, the Supreme Court issued its decision in *People v. Esquivel* (2021) 11 Cal.5th 671 (*Esquivel*). *Esquivel* held that a case in which

4

sentence is imposed, but execution of that sentence is suspended, may be final for purposes of appealability, but it is not final for purposes of retroactivity pursuant to *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). (*Esquivel*, *supra*, at p. 679.) In reaching its decision, the *Esquivel* court perceived "no persuasive reason to presume that the Legislature would wish to extend the benefit of ameliorative legislation to suspended-imposition defendants whose probation is revoked [citation], but not to suspended-execution defendants whose probation is revoked." (*Id.* at p. 680.)

On August 11, 2021, the Supreme Court transferred this case back to this court with directions to vacate our June 22, 2020 decision and reconsider the matter in light of *Esquivel*. On August 12, 2021, defendant filed a supplemental brief arguing that under *Esquivel*, his case is not yet final and thus, that he is entitled to (i) a one-year reduction in his prison term under Senate Bill No. 136, which, effective January 1, 2020 (Stats. 2019, ch. 590, § 1) (Sen. Bill No. 136), amended section 667.5; and (ii) a conditional reversal of his judgment for the court on remand to conduct a mental health diversion eligibility hearing under section 1001.36.

On August 26, 2021, the People filed a supplemental brief and, with one exception, agreed that, pursuant to *Esquivel*, defendant was entitled to the relief that he sought in his supplemental brief. The disagreement between the parties in their supplemental briefing involves whether this court should remand for resentencing after striking the one-year enhancement, as the People argue, or merely strike the one-year enhancement and remand the matter solely for the purpose of allowing the court to consider defendant's eligibility for mental health diversion under section 1001.36, as he argues.

5

As we explain, we agree with the parties that under *Esquivel*, the appealed order revoking defendant's probation and executing the five-year suspended sentence is not final for *Estrada* retroactivity purposes. We also agree that Sen. Bill No. 136 and section 1001.36 apply retroactively; that defendant's 1989 prison prior for grand theft must be stricken; and that defendant is entitled to a limited remand for the court to consider his eligibility for mental health diversion under section 1001.36.

Finally, we conclude that, because defendant's plea did not include any agreement with the People regarding the term of imprisonment, and because defendant was sentenced to the upper term of three years along with the two, one-year enhancements–one of which we now strike–upon revocation of probation, the only issue remaining on remand is whether he is entitled to relief under section 1001.36. In all other respects, the (conditional) judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

As noted, defendant pleaded guilty in East County case 0034 to possession of methamphetamine by a registered sex offender in October 2016. Defendant was initially represented in that case by the San Diego County Public Defender's Office (PD), until it declared a conflict and the Alternate Public Defender (APD) took over his representation. As part of the plea, East County judge John Thompson imposed a five-year prison term, but, as noted, stayed sentence pending defendant's successful completion of probation.

While on probation in case 0034, defendant was charged in South County case 1034 for possession of a controlled substance (methamphetamine) by a registered sex offender. Without disclosing the existence of case 0034, the PD in case 1034 negotiated a deal in which defendant would plead guilty to a felony and be placed on probation.

6

However, at defendant's February 7, 2017 sentencing, South County judge Francis Devaney stated that, before imposing sentence, the court wanted to review the file of East County case 0034, which would be sent to South County to consider together with case 1034. Defendant responded by requesting a *Marsden*[4] hearing, asking that PD Ryan Maguire-Fong be relieved.

On February 21, South County judge Stephanie Sontag conducted the *Marsden* hearing. The sealed transcripts from that hearing show that Judge Sontag initially intended to appoint the APD to represent defendant, because he wanted to withdraw his plea in case 1034 on the ground of ineffective assistance of counsel. During that hearing, however, PD Maguire-Fong informed Judge Sontag that defendant also was considering withdrawing his plea in case 0034.

Judge Sontag in response stated that she was not going to "do anything" with case 0034, adding: "Well, what I'm going to do is for this case [i.e., 1034] I'm going to have the Office of Assigned Counsel [(OAC)] appointed to represent you. So it's neither [the] public defender nor [the] Alternate Public Defender. . . . [¶] All right. So that way, no matter what happens out in [East County], you can—I'm not creating another conflict where you are going to have to come back and get a new lawyer appointed."

The February 21 minute order issued by Judge Sontag shows that defendant's request to relieve PD Maguire-Fong was granted, that the OAC was appointed to represent defendant in case 1034, that a status conference would take place on February 28 before Judge Devaney, and that on March 14 Judge Devaney would also hear defendant's motion to withdraw his plea in case 1034.

---

4    *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

However, in a *separate* South County minute order also dated February 21 pertaining to case 0034, thick lines were drawn through Judge Sontag's order granting defendant's request to relieve the PD and appointing OAC as new defense counsel in case 1034. This separate minute order also showed that PD Maguire-Fong was still representing defendant.

On February 28, Judge Devaney presided over defendant's status conference. The transcript from this hearing shows that APD Shannon Sebeckis appeared on behalf of defendant, and not a lawyer from the OAC, as also confirmed by the February 28 minute order that identified the APD as defendant's counsel of record on case 0034. The record shows that at the outset of the hearing, the court recognized that APD Sebeckis had "just [been] appointed to represent" defendant and the court asked defense counsel, "[w]hat's the game plan?"

Relevant to the instant issue, APD Sebeckis informed the court as follows: "I did just want to clarify one thing. On a prior docket, it does look like OAC was appointed, but [APD] was also appointed. I want to make clear it is our office that has been appointed. We would be asking for that appointment at this time and set further status for March 28, please." Judge Devaney responded, "Right. I can see that Judge Sontag, after the *Marsden* hearing, relieved the [PD], and the clerk wrote OAC. I'll make sure it's the [APD], not OAC."

During this hearing Judge Devaney also asked defense counsel the following question, "Now, would the motions [to withdraw the guilty plea(s)] be on our case, the El Cajon case, or both, or do you not know?" APD Sebeckis responded, "I don't know yet, Your Honor." She told the court that she would review the transcripts from East County case 0034. The court stated that it had received the transcripts from the East County "matter" by

8

e-mail, as had PD Maguire-Fong, and thus, that the transcripts would be available to APD Sebeckis. The court informed defendant that it would conduct a follow-up status conference on March 28 and set the motion to withdraw his guilty plea(s) for April 11.

Also relevant to the instant case, Judge Devaney's February 28 minute order stated "APD is appointed" and set a "Prob Rev" hearing on East County case 0034 for March 28, to "trail" case 1034. Defendant was ordered to remain in custody without bail.

Once again, the record also includes a *separate* February 28 minute order from Judge Delaney arising from the *same* status hearing. Similar to the February 28 minute order for case 0034, this separate minute order states, "APD is appointed on this case." It also provides, "Motion to withdraw plea set for 4-11-17." This minute order also lists APD Sebeckis as defendant's counsel of record.

On May 24, defendant's motion to suppress, and, *if* the motion were denied, his preliminary hearing in case 1034, were set to be heard by Judge Sontag in South County, with East County case 0034 trailing for an "evidentiary hearing." APD Sebeckis appeared for, and confirmed APD's representation of, defendant. At the outset of the hearing, APD Sebeckis requested that the court send case 0034 "back to [East County] to deal with any probation violation," and that it not consider any evidence proffered at the suppression/preliminary hearing in determining whether to revoke defendant's probation.

The record shows that Judge Sontag reviewed the transcript of the October 3, 2016 hearing when Judge Thompson accepted defendant's plea in East County case 0034. Judge Sontag ruled that the court would not use any evidence from the hearing in case 1034 as a basis to revoke defendant's

9

probation in case 0034. However, in so doing the court cogently noted that case 0034 was "trailing for the *wrong* reason, which is, again, a *sentencing issue* and not—*not really a violation issue*." (Italics added.)

The record shows that the court proceeded to hear testimony on defendant's motion to suppress.[5] At the conclusion of that testimony, the court refused to bind defendant over in case 1034, finding that the prosecutor had failed to "provide some substantiation, some evidence here, that there was a 911 call or . . . or a report. Whether it was a call or some other manner, there was a report of a robbery at [a convenience store]." The court noted that the prosecutor had to call the "dispatcher" or "somebody" to show that a 911 call had been placed about the robbery, leading to defendant's detention and search; and that the responding officer's testimony on that point was insufficient.

## DISCUSSION

### I

### The APD's Appointment in Case 1034 Neither Created an Actual Conflict Nor Prejudiced Defendant

Defendant claims that he was deprived of his constitutional right to conflict-free counsel when Judge Devaney appointed the APD to represent defendant in case 1034 in the court's February 28 order, which defendant

---

[5] Defendant's motion does not appear to have been included in the voluminous appellate record in this case. However, from the reporter's transcript of the hearing, it appears that defendant argued that, pursuant to *People v. Madden* (1970) 2 Cal.3d 1017 and *People v. Harvey* (1958) 156 Cal.App.2d 516, the People were unable to show that the information received by an officer through official channels had a legitimate source, and that the People were unable to produce either the original informant as the source of the information relied upon or the officer who received the information from the informant.

alleges contradicted the February 21 order of Judge Sontag appointing the OAC to represent him in that case.

A.  *Guiding Principles*

" 'A criminal defendant is guaranteed the right to the assistance of counsel by the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution.  This constitutional right includes the correlative right to representation free from any conflict of interest that undermines counsel's loyalty to his or her client.' " (*People v. Rices* (2017) 4 Cal.5th 49, 65.)  " 'As a general proposition, such conflicts "embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person or his own interests." ' " (*People v. Doolin* (2009) 45 Cal.4th 390, 417 (*Doolin*).)  The guaranty of conflict-free counsel "protects the defendant who retains his own counsel to the same degree and in the same manner as it protects the defendant for whom counsel is appointed, and recognizes no distinction between the two." (*People v. Bonin* (1989) 47 Cal.3d 808, 834.)

For both state and federal purposes, a defendant seeking to obtain reversal of a judgment on conflict of interest grounds "must demonstrate that (1) counsel labored under an actual conflict of interest that adversely affected counsel's performance, and (2) absent counsel's deficiencies arising from the conflict, it is reasonably probable the result of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1010, 1011 (*Mai*).)  An actual conflict " 'is a conflict of interest that adversely affects counsel's performance.' " (*Doolin, supra,* 45 Cal.4th at p. 418.)

B.  *Analysis*

Applying these principles here, we independently conclude that defendant has failed to demonstrate that APD Sebeckis "labored under an

11

actual conflict of interest" in representing defendant in case 1034. (See *Mai*, *supra*, 57 Cal.4th at p. 1010.) The record shows that, while there may have a been a conflict between PD Maguire-Fong and defendant as a result of defendant's guilty plea to a felony in South County case 1034—opening up the real possibility that Judge Thompson would revoke defendant's probation, lift the stay, and sentence him to prison for five years in East County case 0034, there was no such actual or apparent conflict between APD Sebeckis and defendant in case 1034.

As a threshold matter, the record shows that there was substantial confusion and likely merely a mix-up regarding whether defendant would be represented by the APD or the OAC in case 1034 after the February 21 *Marsden* hearing; there is no evidence that Judge Devaney deliberately reversed or refused to follow Judge Sontag's order appointing the OAC to represent defendant in that case.

As summarized *ante*, the two separate minute orders issued on February 21 for cases 1034 and 0034 appear to conflict; the order for case 1034 provides that OAC would represent defendant, while the order for case 0034 has lines drawn through that portion of the order. Of course, it is possible that the two February 21 orders initially were the same, with the confusion or mix-up taking place a week later at the status conference before Judge Devaney.

Indeed, the record shows that APD Sebeckis appeared at the February 28 status conference and raised the issue whether the APD or the OAC would represent defendant in case 1034, that APD Sebeckis nonetheless represented that the APD had been appointed in case 1034, that Judge Devaney stated that he would look into the issue, and that, as a result of the February 28 hearing, separate orders were created for cases 1034 and 0034,

12

with both orders providing that the APD had been appointed to represent defendant.

Further, the record shows that in late May 2017 APD Sebeckis appeared before Judge Sontag in case 1034 on defendant's motion to suppress evidence. At no time during that lengthy suppression hearing, for which defendant was present, did the issue arise whether the APD, as opposed to the OAC, was the proper agency to represent defendant in that matter. To the contrary, the fact that the APD was representing defendant in case 1034 was a nonissue and made sense, inasmuch as this same agency was *also* representing defendant in case 0034. We thus conclude that defendant cannot show that the APD "labored under an actual conflict of interest" in representing him in both cases. (See *Mai*, *supra*, 57 Cal.4th at p. 1010.)

Even assuming that defendant could show that an "actual conflict of interest" existed in the APD's representation of him in case 1034, his claim of error still fails because he cannot show that it was "reasonably probable the result of the proceeding would have been different" absent such an alleged conflict. (See *Mai*, *supra*, 57 Cal.4th at p. 1010.) To the contrary, the record shows that it was APD Sebeckis who filed the motion to suppress evidence in case 1034, and, as noted, *succeeded* in having the court suppress evidence of defendant's detention and search, leading to the dismissal of that case (subject to its refiling under a new case number).

In addition, the record shows that defendant, while primarily represented by the APD, was able to avoid prison for about a year and a half, despite reoffending and repeatedly failing to follow the terms of his probation in case 0034, as summarized *ante*. Because we conclude that it is not "reasonably probable the result of the proceeding[s] would have been

13

different" absent any presumed conflict by the APD, we reject this claim of error for this reason, as well. (See *Mai*, *supra*, 57 Cal.4th at p. 1010.)

Relying on *People v. Madrigal* (1995) 37 Cal.App.4th 791 (*Madrigal*) and a similar line of cases, defendant nonetheless claims that Judge Devaney lacked the authority to appoint the APD to represent him in case 1034 because of the prior order by Judge Sontag appointing the OAC to that representation. *Madrigal*, however, is factually inapposite to the instant case.

In *Madrigal*, a judge revoked the defendant's probation and sentenced him to four years in prison, after the defendant had pleaded guilty in a subsequent prosecution to attempted second degree burglary before a different judge. (*Madrigal*, *supra*, 37 Cal.App.4th at pp. 794–795.) The plea agreement in the new case stated that (1) the defendant would be placed on probation for three years, and, key to the instant case, (2) his probation in the first case would be revoked and reinstated with no additional time. (*Ibid.*) The *Madrigal* court held that the first judge acted in excess of his authority by revoking the defendant's probation and sentencing him to state prison, after the defendant's probation violation matter had been properly assigned to the second judge in accordance with a local court rule. (*Id.* at pp. 793–794.)

Unlike the situation in *Madrigal* where the defendant was clearly prejudiced as a result of being revoked and sentenced to prison based on a court order that conflicted with another judge's order that the defendant's probation would be revoked and reinstated, in the instant case, we have concluded that defendant was not prejudiced by Judge Devaney's order

14

appointing the APD to represent defendant in case 1034.[6]  In sum, reviewing de novo defendant's claim of error, we conclude that he was not deprived of his constitutional right to conflict-free counsel.[7]

## II

### Authority to Transfer Case 0034 to South County

Defendant next claims that Judge Devaney lacked authority to transfer East County case 0034 to the South County for disposition in that branch because Judge Devaney allegedly contravened the order of another South County judge who had refused such a request.  In support of this claim of error and prejudice, defendant in his opening brief submitted a single-spaced, six-page "summary" of the "procedural timeline" on this issue beginning in late April 2016 and ending about two years later, when defendant was finally revoked and sentenced to a five-year prison term.

A.  *Additional Background*

Highlighting the main points of this "summary," the record shows the following:

* Case 0034 was filed in late April 2016.  In October 2016 when East County Judge Thompson imposed and stayed execution of the five-year prison term in that case, the court told defendant that, while the prosecutor would have the opportunity to argue that defendant's probation should be

---

[6]    The lack of prejudice in the instant case also distinguishes other cases that defendant relies on in support of his claim of error, including, for example, *In re Alberto* (2002) 102 Cal.App.4th 421, 427, where one judge set bail and another judge, believing the bail amount was erroneous, increased that bail, to the prejudice of the defendant.

[7]    In light of our decision on the merits, we deem it unnecessary to reach the People's alternate contention that defendant forfeited this claim of error on appeal by failing to raise it in the trial court.

15

revoked if defendant failed to register as a sex offender or committed a new criminal offense, the court likely would not "violate [defendant] if [he] pick[ed] up a simple misdemeanor."

* In April 2017, Judge Thompson declined to revoke defendant's probation despite defendant's felony guilty plea in new case 1034, after defense counsel (from the APD) informed Judge Thompson that defendant was seeking to withdraw his guilty plea in the new case to avoid prison. During the hearing, defense counsel asked the court what it would be inclined to do if defendant were unable to overturn his guilty plea in case 1034, to which the court responded, "Yeah, if he picked up a new felony, he's going to do the five years. It's simple. That's the deal we cut. He violated. I promised him what was going to happen. I can't now unpromise him." The court clarified that the issue was not "rocket science" and reiterated that defendant would serve five years if he picked up a new felony.

* On May 24, South County judge Sontag refused to bind defendant over on case 1034, as noted, after South County judge Gary Haenhle had granted defendant's motion to withdraw his guilty plea about a week earlier.

* On June 8, case 0034 was again before Judge Thompson. The prosecutor informed the court that case 1034 had been dismissed, but that the People intended to refile that case, and asked the court to trail 0034 pending the refiling of case 1034. APD Shervin Samimi asked the court to "reinstate[ ]" defendant's probation on case 0034 because defendant had not been charged with a new felony conviction. The court in response *unambiguously* stated that it was not taking *any* action with respect to defendant's probation; that once case 1034 was refiled, the People "can schedule it for an OSC re revocation, or use whatever hearing down in South County as a basis for revocation"; and that just to be "clear," the court

16

reiterated it was "[t]aking no action," and was "not going to reinstate [defendant], because he shouldn't have been revoked, at least at this point."

* On or about June 26, the People refiled dismissed case 1034 in new case SCS293962 (hereinafter, 3962), which APD Sebeckis calendared for status review the following day before South County judge Edward Allard III. At the June 27 hearing, the court reduced defendant's bail to $5,000 on case 3962 and set arraignment for June 30.

* On June 30, defendant failed to appear for arraignment. The People asked South County judge Theodore Weathers—then the sixth[8] South County judge to be involved in cases 1034 and/or 3962—to issue a bench warrant for defendant and raise his bail. APD Sebeckis appeared on behalf of defendant. She opposed the People's request to transfer case 0034 to South County, at one point *incorrectly* representing to the court that East County judge Thompson had "reinstated" defendant's probation at the June 8 hearing.

* On July 3, Judge Weathers granted the People's request to have case 0034 transferred to South County to trail the new case, and for a probation revocation hearing on July 5 before Judge Allard.

* On July 5, Judge Allard denied the People's request to revoke defendant's probation in case 0034. During this hearing Judge Allard ordered defendant released from custody, after finding that case 3962 was not a new charge and relying on *incorrect* information provided by defense counsel that the East County court allegedly had "heard the matter, and

---

8    The record shows in early April 2017, South County judge Ana Espana had ordered cases 0034 and 1034 transferred to East County judge Thompson. In addition to Judge Espana, proceedings in cases 0034, 1034 and/or 3962 were at times before South County judges Devaney, Sontag, Haenhle, Allard, Weathers, and ultimately, as discussed *post*, Moring.

17

what they did is that at best, *they revoked, reinstated, same terms and conditions*. That is why I say he is out on probation in the [East County] case, despite this allegation and despite his record." (Italics added.) At the request of the prosecutor, the court agreed to have case 0034 brought to South County, but then stated that it would consider that case for "informational purposes only." The court went on to note that it was not putting case 0034 on calendar, because it did not want to "overstep[ ]" the "authority" of an East County judge; and that because the East County court allegedly had "heard" the matter, Judge Allard was "not going to second[-] guess a court in [East County]."

\* On September 8, South County judge Dwayne Moring presided over defendant's preliminary hearing in case 3962. Judge Moring bound defendant over on the charges of possession of narcotics by a registered sex offender and possession of drug paraphernalia. However, Judge Moring denied the People's request to revoke defendant's probation in case 0034, stating that matter was not before him.

\* On October 10, Judge Devaney ordered case 0034 to be transferred to South County, and set a bail review in case 3962 with case 0034 trailing before Judge Allard. In so doing, Judge Devaney noted the "confusion" over the status of defendant's cases and further noted that, while Judge Allard may have said that it was unnecessary to have case 0034 in South County, at some point it would be necessary to consider that case if defendant was convicted on case 3962. In opposing the transfer of case 0034 to South County, APD Sebeckis again informed the court, *incorrectly*, that Judge Thompson "had already made a decision based on the fact of this case, and that was not to revoke [defendant's] probation"; and that, because Judge Thompson allegedly had already ruled not to revoke defendant, no other

18

judge could do so based on case 3962, which involved the same facts as dismissed case 1034.

* On October 16, APD Sebeckis convinced Judge Allard to vacate all future hearings in case 0034, despite Judge Devaney's ruling about a week earlier, after APD Sebeckis yet again *incorrectly* informed the court that defendant in case 0034 had been reinstated on probation and released from custody.  Judge Allard repeated that he was "not going to backdoor [East County]" by having case 0034 transferred to South County.  During this same hearing, the prosecutor informed Judge Allard that APD Sebeckis was not correct in representing what Judge Thompson had done at the June 8 hearing in East County, instead noting that the court had taken "no action" with respect to South County case 1034 because that case had been dismissed and would soon be refiled (as case 3962).  Judge Allard commented that was not his understanding, and ordered case 0034 to remain in East County.

* On October 30, over objection, Judge Devaney entered a "final[,] 'not to be readdressed ruling' again about these files," ordering case 0034 transferred to South County, after issuing a bench warrant because defendant had failed to appear for a readiness conference and had been out of contact with parole for two and one-half weeks after his GPS bracelet battery had died.  Over the further objection of APD Sebeckis, Judge Devaney admonished the parties not to file any future motions regarding the transfer of the files of case 0034 to South County.  Judge Devaney set defendant's trial in case 3962 for November 2, 2017.  Defendant, however, failed to appear on that date, leading the court to issue a bench warrant.

* On January 3, 2018, the People filed another new case, number SCS297988 (hereinafter, 7988), based on defendant's failure to appear at the October 30 hearing in case 3962 while on bail as a result of a felony charge.

19

APD Brooke LaFrance appeared on behalf of defendant. Over objection, Judge Devaney granted the People's request that the preliminary hearing in case 7988 could serve as an evidentiary hearing in determining whether defendant had violated probation in East County case 0034.

* On January 25, defendant sought a two-week continuance after representing that he was in the process of retaining private counsel. The prosecutor opposed the continuance, noting that defendant "has been stalling this case for the past year and a half." In granting the short continuance, Judge Weathers admonished defendant that the preliminary hearing in case 7988, and the evidentiary hearing in case 0034, would go forward on February 8, 2018.

* On February 8, defendant arrived late for the preliminary hearing. The court noted defendant's "habitual tardiness"; defendant had been ordered to appear at 8:30 a.m. and had arrived at about 10:15 a.m. Defendant represented that he was in the process of finalizing his retention of private counsel, and claimed that he was late to court because the batteries in his cellphone had died, and because the manager of the hotel where defendant was residing had failed to awaken him due to some "malfunction."

* On March 29, defendant failed to appear for the continued preliminary hearing, leading the court to issue a no-bail warrant, after noting that it was "ironic" that defendant failed to appear "on a failure to appear." The prosecutor at this hearing informed the court that defendant had been arrested for drug possession after the last court hearing. Judge Weathers summarily revoked defendant's probation in East County case 0034, noting that the court already had "been around and around and around the block" on that case.

\* On April 26, the court bound over defendant on case 7988, after hearing witness testimony, including by defendant; and found him in violation of probation in case 0034 based on his failure to "remain law abiding."

\* On May 30, Judge Weathers lifted the stay in case 0034, sentenced defendant to five years in prison, and dismissed the remaining cases, after Judge Weathers had previously granted the defense a short continuance to allow a psychologist to evaluate defendant.

As noted, defendant claims that Judge Devaney lacked the authority to transfer case 0034 to South County because Judge Allard had already ruled at a prior hearing that case 0034 would remain in East County and that, in any event, the transfer of that case to South County would be for "informational purposes" only.

B. *Guiding Principles*

"An individual judge (as distinguished from a court) is not empowered to retain jurisdiction of a cause. The cause is before the court, not the individual judge of that court, and the jurisdiction which the judge exercises is the jurisdiction of the court, not of the judge. Rules of court which provide that posttrial proceedings in a cause shall be heard by the judge who tried the matter are entirely proper, but the individual judge cannot order that such proceedings must be heard by him [or her]." (*People v. Osslo* (1958) 50 Cal.2d 75, 104; see *Shane v. Superior Court* (1984) 160 Cal.App.3d 1237, 1249 [noting that the "jurisdiction of a multijudge, multidepartment superior court is vested in the court as a whole and if one department exercises authority in a matter which might properly be heard in another such action, although 'irregula[r],' it does not amount to a defect of jurisdiction"].)

21

However, when a " 'proceeding has been duly assigned for hearing and determination to one department of the superior court by the presiding judge of said court in conformity with the rules thereof, and the proceeding so assigned has not been finally disposed of therein or legally removed therefrom, it is beyond the jurisdictional authority of another department of the same court to interfere with the exercise of the power of the department to which the proceeding has been so assigned. [Citation.] In other words, while one department is exercising the jurisdiction vested by the Constitution in the superior court of that county, the other departments thereof are as distinct therefrom as other superior courts. [Citation.] If such were not the law, conflicting adjudications of the same subject-matter by different departments of the one court would bring about an anomalous situation and doubtless lead to much confusion.' (*Williams v. Superior Court* (1939) 14 Cal.2d 656, 662–663 [(*Williams*)].)" (*Madrigal*, *supra*, 37 Cal.App.4th at pp. 795–796.)

C. *Analysis*

Turning to the instant case, we conclude that Judge Devaney's transfer of case 0034 to South County to trail South County cases 3962 and 7988 was a proper exercise of his authority. First, as demonstrated by the record, neither case 0034, nor cases 1034, 3962, or 7988, was "duly assigned"—by local rule or otherwise—exclusively to Judge Allard. (See *Williams*, *supra*, 14 Cal.2d at p. 663; *Madrigal*, *supra*, 37 Cal.App.4th at p. 796.) To the contrary, the record shows that seven judges in South County at various times presided over one or more of the criminal cases pending against defendant.

Second, the record shows that when Judge Allard ordered that case 0034 would be transferred to South County for "information purposes only"

22

on July 5, 2017, he was relying on misinformation regarding what East County judge Thompson had done at the June 8 hearing.

As summarized in detail *ante*, the record shows that defense counsel repeatedly represented at the July 5 hearing—and at other hearings including on October 10 and 16—that, at the June 8 hearing, Judge Thompson had revoked *and* reinstated defendant's probation on the same terms, when the unambiguous record shows that in fact, Judge Thompson clearly stated that he was taking "no action" because South County case 1034 was being dismissed and would be refiled under a new case number. In our view, Judge Devaney's order to consolidate all of the cases against defendant in one branch, finally and decisively ended the obvious "confusion" created by defendant and his team of defense counsel.

In addition to relying on *Madrigal*, which we have already determined to be inapposite, defendant also relies on *People v. Ellison* (2003) 111 Cal.App.4th 1360 (*Ellison*) to support his claim that Judge Devaney lacked the authority to transfer case 0034 to South County. *Ellison* does not assist defendant.

In *Ellison*, the first judge accepted the defendant's guilty plea, but told the defendant that he would be unavailable to impose sentence. Accordingly, the defendant agreed to be sentenced by a different judge (*Ellison, supra*, 111 Cal.App.4th at p. 1363), waiving his rights under *People v. Arbuckle* (1978) 22 Cal.3d 749, 756 (*Arbuckle*). *Arbuckle* held that, absent a defendant's waiver, when a plea bargain is entered in expectation of and in reliance upon a discretionary sentence being imposed by the same judge, a sentence imposed by another judge will be vacated. At the sentencing hearing, the second judge in *Ellison* ordered the defendant's immediate release from jail pending a supplemental probation report. However, the defendant was not released

23

because of an anonymous request made to a third judge to place a "hold" on the defendant. (*Ellison*, *supra*, at p. 1364.) The defendant's case thereafter returned to the first judge, who withdrew the second judge's release order and ordered that the defendant be imprisoned. (*Id.* at p. 1366.)

In reversing, the *Ellison* court agreed with the defendant that the first judge had no authority to countermand the second judge's release order. The court in *Ellison* instead concluded that the first and third judges had interfered with the second judge's release order, and that the second judge had obtained exclusive jurisdiction over the sentencing of the defendant based on the defendant's *Arbuckle* waiver, which pertained to the first judge but not to the second judge; and based on the second judge's decision that the defendant should be immediately released and referred back to probation for the preparation of a supplemental report as a result of the defendant's mental health and drug issues. (See *Ellison*, *supra*, 111 Cal.App.4th at pp. 1364, 1367.)

As we have noted, neither East nor South County exercised exclusive control over case 0034, or, for that matter, any of the South County cases filed against defendant. Moreover, unlike the unique situation in *Ellison* where one judge defied the order of another judge in *sentencing* the defendant, in the instant case there was no such conflict in any order regarding the sentencing of defendant. Instead, the conflict, to the extent one existed, with respect to the orders of Judges Devaney and Allard were the direct result of misinformation provided by the defense, as we have summarized. In any event, any such conflict went merely to the issue of *where* case 0034 would be heard for purposes of sentencing defendant, once and for all, as a result of the other criminal cases pending against him and/or his performance on probation in case 0034.

We thus conclude, in light of the "confusi[ng]" procedural history of this case, that Judge Devaney had the authority to transfer case 0034 to South County to trail the additional criminal cases pending against defendant in that branch.

III

Prison Prior Enhancements under Newly Amended Section 667.5

On October 8, 2019, the Governor signed Sen. Bill No. 136, amending the circumstances under which the one-year sentence enhancement may be imposed under newly amended section 667.5, subdivision (b). Under the new law, the one-year enhancement applies only if a defendant has served a prior prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). (Stats. 2019, ch. 590, § 1.)

We agree with the parties that, pursuant to *Esquivel*, defendant is entitled to relief under Sen. Bill No. 136 because a "case in which a defendant is placed on probation with imposition of sentence suspended is not yet final for [purposes of retroactivity] if the defendant may still timely obtain direct review of an order revoking probation and imposing sentence." (*Esquivel*, *supra*, 11 Cal.5th at p. 673.) We therefore conclude that the one-year enhancement imposed for defendant's 1989 grand theft conviction must be stricken.

The Supreme Court has held that "when part of a sentence is stricken on review, on remand for resentencing [ordinarily] 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.'" (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) Appellate courts have applied this full-resentencing rule after striking prison prior term enhancements under Sen. Bill No. 136, unless the trial court imposed the maximum possible sentence. (See e.g., *People v.*

25

*Keene* (2019) 43 Cal.App.5th 861, 865; *People v. Jennings* (2019) 42 Cal.App.5th 664, 682; *People v. Lopez* (2019) 42 Cal.App.5th 337, 342.) Because, as we also have noted, the trial court sentenced defendant to the upper term of three years on count 1, and because, in any event, California's constitutional prohibition against double jeopardy precludes the imposition of more severe punishment on resentencing (*People v. Hanson* (2000) 23 Cal.4th 355, 357), we conclude that defendant received the maximum possible sentence and thus, that remand for resentencing is unnecessary for purposes of Sen. Bill No. 136.

IV

Diversion under Section 1001.36

Section 1001.36 was enacted on June 27, 2018, and took effect immediately. (Stats. 2018, ch. 34, §§ 24, 37.)  It authorizes trial courts to grant pretrial diversion to defendants with mental disorders, and it directs courts to dismiss charges against participants who successfully complete mental health treatment.  (§ 1001.36, subds. (a), (c) & (e).)

We agree with the parties that under *Esquivel*, section 1001.36 applies retroactively to defendant.  (*Esquivel*, *supra*, 11 Cal.5th at p. 679 [holding that a case in which sentence is imposed, but execution of that sentence is suspended, may be final for purposes of appealability, but it is not final for purposes of retroactivity pursuant to *Estrada*]; see *People v. Frahs* (2020) 9 Cal.5th 618, 631 (*Frahs*) [explaining that § 1001.36 "provides a possible benefit to a class of criminal defendants," and that it is "the ameliorative nature of the diversion program [that] places it squarely within the spirit of the *Estrada* rule"]; compare *People v. Rodriguez* (2021) __ Cal.App.5th __, 2021 WL 3926249 *3, fn. 3 [concluding that the defendant was not entitled to mental health diversion because § 1001.36 became effective months *before*

26

the defendant pled guilty and was placed on probation, and therefore, that the defendant's eligibility for diversion was not governed by *Frahs*].)

The People previously conceded that *if* section 1001.36 applied retroactively to defendant, he has made a prima facie showing that he will meet the minimum requirements of eligibility for diversion.

Under section 1001.36, if a defendant is charged with a qualifying offense, a trial court may grant pretrial diversion if it finds all of the following: (a) the defendant suffers from a qualifying mental disorder; (b) the mental disorder was a significant factor in the commission of the charged offense; (c) in the opinion of a qualified mental health expert, the defendant's symptoms will respond to mental health treatment; (d) the defendant consents to diversion and waives his or her right to a speedy trial; (e) the defendant agrees to comply with treatment as a condition of diversion; and (f) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (b)(1)(A)-(F).)

A defendant bears the burden of making a prima facie showing that he or she meets the minimum requirements of eligibility for diversion. (§ 1001.36, subd. (b)(3).) Even if a defendant otherwise satisfies the six eligibility requirements, the court must nonetheless be satisfied that the recommended mental health treatment program "will meet the specialized mental health treatment needs of the defendant." (*Id.*, subd. (c)(1)(A).) "Before approving a proposed treatment program, the court shall consider the request of the defense, the request of the prosecution, the needs of the defendant, and the interests of the community." (*Id.*, subd. (c)(1)(B).)

If the six criteria in section 1001.36, subdivision (b)(1) are met, and if the trial court "is satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health

27

treatment needs of the defendant" (§ 1001.36, subd. (c)(1)(A)), the court may order diversion into an approved mental health treatment program for up to two years (*id.*, subd. (c)(1) & (3)).  If the defendant commits an additional offense or otherwise performs unsatisfactorily in the diversion program, the court may reinstate the criminal proceedings.  (*Id.*, subd. (d).)  However, "[i]f the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion," and "the arrest upon which the diversion was based shall be deemed never to have occurred."  (*Id.*, subd. (e).)

Defendant included in his brief for sentencing after revocation the psychological evaluation report prepared by licensed psychologist E. Warren O'Meara, Ph.D.  In addition to reviewing various police and medical reports involving defendant, Dr. O'Meara conducted an in-person clinical interview and mental status examination of defendant in May 2018.  Using the Diagnostic and Statistical Manual of Mental Disorders, Dr. O'Meara concluded that defendant suffers from a qualifying severe attention-deficit/hyperactivity disorder; delusional disorder, mixed type; methamphetamine and opioid dependence; and bereavement.  Dr. O'Meara further concluded that defendant may have bipolar disorder, observing that he could "be grandiose and cycle to being contrite."

Dr. O'Meara noted that defendant had been in prison for most of his adult life, that defendant has never received treatment for his drug addiction and "psychological difficulties" and that without treatment, defendant would "continue to reoffend cycling in and out of prison."

At defendant's sentencing on case 0034, which took place on May 30, 2018, the court noted that it had considered, among other documents, the

psychological evaluation of defendant prepared by Dr. O'Meara. The defense argued that the court should reinstate probation and order defendant into an appropriate residential drug treatment facility where defendant's "mental health and addiction disorders" could be addressed. Relying primarily on Dr. O'Meara's evaluation, the defense noted that defendant had a "long history of mental illness" for which he has never been treated, that defendant, in response, "self-medicat[ed]" for his mental health issues, which in turn led to "drug addiction" and "criminality," and that without treatment, defendant would "just continue to cycle in and out of the prison system," as also noted by Dr. O'Meara.

Defendant also addressed the court at sentencing and admitted that his mental health issues had gone untreated in part because he was "embarrass[ed]" by them. Defendant appeared willing to participate in mental health and substance abuse treatment in lieu of returning to prison.

Based on the foregoing, we agree with the parties that defendant has made a prima facie showing that he will meet the minimum requirements of eligibility for diversion under section 1001.36. We therefore conclude that defendant is entitled to a conditional reversal of the judgment to allow the court to consider on remand whether he is suitable for diversion.

V

Imposition of Fines, Fees, and Assessments

Finally, defendant contends that the trial court violated his due process rights by imposing various fines, fees, and assessments without considering his ability to pay, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). The People counter that defendant forfeited this claim by failing to

raise it in the trial court and that *Dueñas* in any event is distinguishable and wrongly decided.[9]

In this case, the record shows that the court ordered defendant to pay the minimum $300 restitution fine (§ 1202.4, subd. (b)) and a matching probation revocation fine (§ 1202.45); a $40 court operations assessment fee (§ 1465.8); a $30 criminal conviction assessment (Gov. Code, § 70373); and a $154 criminal justice administrative fee (*id.*, § 29550.1).

We need not decide whether defendant forfeited his right to object to the imposition of the fines, fees, and assessments, or whether *Dueñas* applies to him because on this record we conclude that defendant has the ability to pay such fines, fees, and assessments based on his employment history. Unlike the defendant in *Dueñas* who was unable to work because she was a homeless mother with cerebral palsy, whose family was unable to afford basic necessities (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1160–1161), the record here shows that, prior to his arrest, defendant was working in his step-father's business earning $6,000 a month "or more." We thus reject this claim of error.

---

[9]     The Supreme Court will soon have the last word on this subject. (See *People v. Kopp* (2019) 38 Cal.App.5th 47 (review granted November 13, 2019, S257844). We note in passing, however, that several cases have disagreed with *Dueñas* and found that due process principles do not require a court to determine whether a defendant has the ability, present or otherwise, to pay various fines, fees, and assessments before such are imposed. (See e.g., *People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Hicks* (2019) 40 Cal.App.5th 320, 329, review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.)

## DISPOSITION

The judgment is conditionally reversed. The case is remanded with instructions to the trial court to determine whether defendant is eligible for diversion under section 1001.36 and, if so, to exercise its discretion within the procedures set forth in the statute. If the court does not grant diversion, or if the court grants diversion but later determines that the criminal proceedings should be reinstated, the court shall reinstate the judgment, as modified by this opinion (i.e., striking under Sen. Bill No. 136 the one-year enhancement for defendant's 1989 conviction for grand theft). In all other respects, the judgment is affirmed.

AARON, J.

WE CONCUR:

HALLER, Acting P. J.

IRION, J.

31