[No. A098103. First Dist., Div. Two. Sept. 2, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY LEE ELLISON, Defendant and Appellant.

[No. A101964. First Dist., Div. Two. Sept. 2, 2003.]

In re GREGORY LEE ELLISON on Habeas Corpus.

**COUNSEL**

The First District Appellate Project and L. Richard Braucher for Defendant and Appellant.

Bill Lockyer, Attorney General, and Christina Vom Saal, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

KLINE, P. J.—This is an appeal from a final judgment following probation revocation proceedings. (Pen. Code, § 1237.)[1] ▪ The sole issue presented is whether Humboldt County Superior Court Judge Timothy P. Cissna, who revoked appellant's probation and sentenced him to state prison, had jurisdiction to do so. We shall determine he did not. Accordingly, we shall declare Judge Cissna's orders void, vacate them, and remand the case for sentencing before Superior Court Judge Harold E. Neville, Jr., whose sentencing of appellant was improperly aborted by Judge Cissna and another Humboldt County Superior Court judge. Appellant also has filed a petition for writ of habeas corpus, arguing ineffective assistance of counsel. In light of our holding on the direct appeal, we shall deny the writ petition as moot.

### FACTS AND PROCEEDINGS BELOW

Appellant is a Marine veteran with a history of mental illness. He has been hospitalized at Veterans Administration (V.A.) psychiatric wards on at least eight occasions, and also received mental health treatment from programs in Oregon and Humboldt County. Appellant has been receiving disability payments since 1989, when he was diagnosed as bipolar. His monthly benefit is now $731, and this comprises his sole source of support. Appellant also has a significant criminal record in Oregon, commencing in 1974. Prior convictions include theft, burglary, drug offenses and misdemeanor "menacing," and they usually resulted in probation or short jail sentences. The district attorney declined to file or dismissed criminal complaints after several arrests, apparently because, as determined in connection with a "reckless burning" charge in 1985, appellant was "mentally incompetent."

The events that led to the instant offenses occurred on December 22, 1998, when appellant was arrested for killing a kitten he took from a couple after verbally harassing them while they were walking in the City of Eureka. After appellant was taken into custody he became angry and threatened the arresting officer, who had placed him in custody. As a result, appellant was charged with two counts of making criminal threats (§ 422), one count of cruelty to an animal (§ 597, subd. (a)), and one count of interfering with an officer (§ 69). Appellant entered a plea of guilty to one count of making a criminal threat, and no contest to the other such charge and to interfering with an officer. The remaining count was dismissed.

---

[1] All subsequent statutory references are to the Penal Code unless otherwise indicated.

On April 28, 1999, the court imposed the upper term of three years on counts one and four, to be served concurrently, and the mid term of eight months on the remaining count (cruelty to an animal), to be served consecutively. Finding unusual circumstances due to appellant's mental condition, the court suspended imposition of sentence and placed him on supervised probation for five years with various terms and conditions, most notably a requirement that he take prescribed medications. As a condition of probation, appellant was ordered to spend one year in county jail with credit for time served, or in a residential drug treatment program.

On September 10, 2001, after appellant tested positive for marijuana and methamphetamine, the probation department filed a notice of probation violation. At a hearing two days later, Superior Court Judge Timothy P. Cissna denied bail. On September 21, 2001, after being advised of his rights, appellant admitted the violation.

On November 26, 2001, after appellant had admitted violating probation, but before the court decided whether to execute the prior sentence that had been imposed but suspended, defense counsel requested a new mental evaluation of appellant by the Humboldt County Mental Health Department. The court granted the request and, with appellant's consent, continued the matter to December 4, 2001. On December 4 the court continued the matter again to December 13. Because the report had not been completed by December 13, the court continued the matter again, setting a hearing "for status of sentencing" on December 23, 2001. On December 21, 2001, the matter was continued again to January 4, 2002.

At the January 4 hearing, appellant's counsel, Deputy Public Defender James Flower, asked the Honorable Timothy P. Cissna, the superior court judge who had been presiding over the case from the outset, to set the sentencing hearing on January 11, 2002, to provide him time to review the mental health report prepared by Dr. Otto Vanoni. Judge Cissna agreed, but informed appellant that he would be unable to preside at the sentencing hearing, stating: "You need to understand there will be a different judge here. That will be Judge Neville. Is it agreeable with you that you'll be sentenced by whatever judge is present?" Appellant agreed, and Judge Cissna directed the clerk of the court to "[n]ote in the minutes there's an Arbuckle waiver." (See *People v. Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220].)

At the sentencing hearing on January 11, 2002, assigned Judge Harold E. Neville, Jr., expressed agreement with defense counsel "that we're dealing with someone who basically has a mental health problem and a secondary drug problem," and stated, "I don't know why he can't be stabilized with the

proper medication and treatment, but I don't particularly want now to send him to prison." Judge Neville declared his intention "to continue the matter, put him on some type of program, refer him back to Probation and go from there in the hopes that he maintains his medical—medicine intake and we don't have these outbursts of temper or unacceptable behavior." At the request of the court, appellant agreed to waive time of sentence, and the deputy district attorney stated that he had no objection to the time waiver. The court thereupon expressed its "understanding that the sentencing is going to be continued with eventual supplemental report from probation in addition to [the] one they've already filed." At the end of the hearing, Judge Neville referred the matter "back to the probation officer. Sentencing will be continued. And I'd like to track it every thirty days, see ... where we are, see if we can get him back down to the V.A., keep him on his medicine, or if there's a local program.... I'm not going to be the one that picks out the program. Probation's going to have to do that." The court thereupon also ordered appellant "to be released on his own recognizance" with specified conditions. The matter was continued to February 11, 2002. The verbal order suggested the release was to take place immediately but was not entirely clear as to this. However, the minutes of hearing made clear that the discharge was to take place immediately; it stated: "ATTEN PROBATION; DEFENDANT IS RE-FERRED BACK FOR MENTAL HEALTH PROGRAMS/MEDICATIONS. [¶] Custodial status: ROR; *defendant ordered discharged on this matter.*" (Italics added.) The district attorney never challenged the release order or sought clarification as to whether it required appellant's immediate release. As will be seen, the probation department and another superior court judge interpreted the order as directing immediate release, and that is a reasonable interpretation.

On January 15, four days after the January 11 hearing conducted by Judge Neville, Judge Cissna convened a hearing to advise counsel on the record of a "brief off-the-record conversation with a fellow judge" pertaining to the case. Acknowledging that Judge Neville's order that appellant be immediately released was never carried out, Judge Cissna disclosed that Judge Miles, the "on-call magistrate," told him she had received a phone call from someone at the jail—"kind of an ex parte communication"—wherein the unidentified person "expressed concerns" about the immediate release of appellant. Judge Cissna stated that Judge Miles had placed a "hold" on appellant's release. He also stated that the matter had been returned to his calendar. Judge Cissna then adjourned the hearing and set January 18, 2002, "for a further bail/O.R. hearing." The sentencing hearing was set for February 11, 2002.

At the January 18 hearing, Judge Cissna indicated that his "concern for the safety of society" made it necessary to "deny ... or withdraw that release on own recognizance [ordered by Judge Neville] pending sentencing ...."

At the sentencing hearing on February 11, defense counsel declared his belief that the probation department defied Judge Neville by improperly communicating with Judge Miles and "persuading her to cancel [his] order releasing [appellant]" and by refusing to submit the type of supplemental report Judge Neville ordered, which defense counsel characterized as "contempt of court." Judge Cissna expressed his "doubt that probation intentionally didn't follow a judge's order" but left it to counsel to pursue that question.

Judge Cissna also questioned the need for a supplemental report "about mental health programs and medications," because he did not think it would alter "my tentative decision … to send Mr. Ellison to prison." During a lengthy presentation, defense counsel argued that the probation department's failure to comply with Judge Neville's orders raised a constitutional question: "I don't believe it's due process for [the probation officer] to come in good faith before the sitting judge, have that judge make an order or referral, and then have that referral—that order not be carried out." "I believe that Probation has … responsibility to follow Judge Neville's orders. Otherwise, it would be very difficult for me to know what to do when there is a judge substituting in Your Honor's place, because I won't be able to count on what that judge says is supposed to be done getting done…. That's why I think it's an important due process issue. If Judge Neville had said, I don't want to touch this case; let's wait for Judge Cissna, that would have been something else. We came in good faith before the judge who was assigned to us to hear the case. We think that his orders should be honored."

Judge Cissna denied the request to order the probation department to prepare and submit the supplemental report ordered by Judge Neville. Sentencing was continued to February 13. On that date a further continuance was ordered when defense counsel indicated an intention to move to disqualify Judge Cissna. The court directed appellant to file his motion to disqualify within the week, and ordered counsel to file simultaneous briefs as to the timeliness of the motion on February 20. A hearing on the motion to disqualify was set for February 25.

Appellant's motion to disqualify, which was filed on February 14, was based solely on the declaration of counsel "[t]hat the Honorable T. Cissna is prejudiced against the defendant and the interests of the defendant so that defendant's attorney believes defendant cannot have a fair and impartial hearing before said Judge." On February 25, Judge Cissna denied appellant's motion to disqualify as untimely. At the same hearing, after the arguments of counsel, Judge Cissna sentenced appellant to the previously imposed state prison sentence.

On January 15, 2002, appellant appeared before Judge Cissna at a bail/O.R. hearing, which resulted in an order maintaining him in custody until sentence was imposed.

At a hearing on February 11, 2002, appellant's counsel requested that the probation department develop the mental health treatment plan previously ordered by Judge Neville, as part of its supplemental report. This request was denied by Judge Cissna, who continued sentencing and directed that appellant remain in custody.

On February 13, 2002, sentencing was again continued after appellant's counsel stated an intention to move to disqualify Judge Cissna. (Code Civ. Proc., § 170.6.) On February 25, after the motion was made, Judge Cissna denied it as untimely.

On February 27, 2002, Judge Cissna sentenced appellant to the three-year and eight-month sentence previously imposed, granting 381 days credit for time served and conduct credit in the amount of 190 days, for a total credit of 571 days. The court ordered appellant to pay restitution in the amount of $800 and suspended a parole revocation fine in the same amount. This timely appeal followed.

## DISCUSSION

" ' " ' " 'A superior court is but one tribunal, even if it be composed of numerous departments .... An order made in one department during the progress of a cause can neither be ignored nor overlooked in another department....' " [Citations.] This is because the state Constitution, article VI, section 4 vests jurisdiction in the court, "... whether sitting separately or together, the judges hold but one and the same court" ' " ' (*Silverman v. Superior Court* (1988) 203 Cal.App.3d 145, 150–151 [249 Cal.Rptr. 724]). ' "One department of the superior court cannot enjoin, restrain, or otherwise interfere with the judicial act of another department of the superior court." ' (*Id.* at p. 151.) The first department ' "to assume and exercise jurisdiction over a matter acquires exclusive jurisdiction." ' (*Ibid.*) ' "A judgment rendered in one department of the superior court is binding on that matter upon all other departments until such time as the judgment is overturned." ' (*Ibid.*)" (*People v. Madrigal* (1995) 37 Cal.App.4th 791, 796 [43 Cal.Rptr.2d 498] (*Madrigal*); accord, *Williams v. Superior Court* (1939) 14 Cal.2d 656, 662 [96 P.2d 334]; *In re Kowalski* (1971) 21 Cal.App.3d 67, 70 [98 Cal.Rptr. 444].)

■ *People v. Arbuckle, supra*, 22 Cal.3d 749, held that where a plea bargain is entered in expectation of and in reliance upon sentence being imposed by the same judge, a sentence imposed by another judge cannot be

allowed to stand. As earlier described, appellant's case was initially assigned to Judge Cissna. By entering his *Arbuckle* waiver, which was made after Judge Cissna indicated that Judge Neville would be available to preside at the sentencing hearing set for January 11, 2002, appellant agreed to be sentenced by a judge other than Judge Cissna.

When, at the January 11 sentencing hearing, Judge Neville directed the probation department to prepare a supplemental report, he issued an order relating to the sentencing of appellant, and, because appellant never made a subsequent *Arbuckle* waiver, he obtained exclusive jurisdiction over sentencing. As Judge Neville's order pertained to the disposition of a cause assigned to his department, no other judge could thereafter interfere with his exercise of his sentencing power. (See *People v. Wong Bin* (1903) 139 Cal. 60, 63 [72 P. 505].) "In other words, while one department is exercising the jurisdiction vested by the Constitution in the superior court of that county, the other departments thereof are as distinct therefrom as other superior courts. [Citation.] If such were not the law, conflicting adjudications of the same subject-matter by different departments of one court would bring about an anomalous situation and doubtless lead to much confusion." (*Williams v. Superior Court, supra,* 14 Cal.2d 656, 662–663.)

*Madrigal, supra,* 37 Cal.App.4th 791, illustrates the application of this principle. There, the first judge placed the defendant on three years' probation after he pleaded no contest to receiving stolen property. In a subsequent prosecution before a second judge, the defendant pleaded guilty to attempted second degree burglary pursuant to a plea agreement providing that he would be placed on probation for three years on condition that he spend one year in jail. It was also agreed that probation in the first case would be revoked and reinstated with no additional time. The defendant was advised that he would be on probation in both cases. Subsequently, a third judge sentenced the defendant in accordance with the terms of the plea agreement in the second case. Thereafter, the prosecutor filed with the first judge a motion to revoke the probation from the first case based on the defendant's conviction in the second case. The first judge found the defendant in violation of the probation from the first case on the basis of his conviction in the second and sentenced him to state prison for four years concurrent with his sentence in the second. The Court of Appeal reversed and vacated the order purporting to revoke probation and sentence the defendant to prison, and directed the trial court to enter a new and different order revoking probation and reinstating it under the same terms and conditions. (*Id.* at pp. 794–795.)

*Madrigal* holds that the first judge acted in excess of his authority by revoking the defendant's probation and sentencing him to state prison,

because the probation violation matter had been properly assigned to the second judge in accordance with a local court rule providing that a probation violation matter is to be heard by the same judge to whom the new criminal matter has been assigned unless the file contains a written request from the judge who granted probation that the matter be heard by him or her. Because there was no such request, the second judge was vested with exclusive authority; that is, the second judge "continued to have jurisdiction over the probation violation *until the matter was concluded.*" (*Madrigal, supra,* 37 Cal.App.4th at p. 797, italics added.)

*Madrigal* is not, as respondent contends, inapposite. Though the facts of that case are more complex than those of the case before us, the jurisdictional defect in *Madrigal* is the same. After the sentencing of appellant was properly assigned to Judge Neville and he ordered appellant released and directed the probation department to prepare a report on specified issues, but before sentencing was concluded, Judge Miles (apparently on the basis of an ex parte communication from an unidentified correctional officer who disagreed with Judge Neville's action) relieved the probation department of the duty to comply with Judge Neville's orders directing appellant's release and to submit another probation report. Thereafter, upon his return to Humboldt County, Judge Cissna reasserted his authority to sentence appellant and did so in a manner inconsistent with the sentence Judge Neville had indicated he intended to impose. We believe that, because appellant made no *Arbuckle* waiver after sentencing proceedings were commenced by Judge Neville, the orders subsequently made by Judge Miles and Judge Cissna improperly interfered with Judge Neville's judicial act. Judge Miles's order is a fait accompli that cannot be undone, but Judge Cissna's order has continuing consequences that require us to set it aside.

Respondent maintains that the propriety of Judge Cissna's sentencing order is rendered moot by the fact that appellant was (inexplicably)[2] released on parole on April 19, 2003, as respondent contends. We disagree. ■ A criminal case should not be considered moot where a defendant has completed a sentence where, as here, the sentence may have "disadvantageous

---

[2] The only evidence of appellant's release from state prison is a one-sentence declaration Deputy Attorney General Christina Vom Saal appended to respondent's reply brief, which states: "On Thursday, May 15, 2003, I called (916) 445-6713, the prisoner information number, provided the operator with appellant's full name and date of birth, and was informed that he had been released from state prison on April 19, 2003. Thus, we have no information as to why appellant was released on this date. However, shortly before appellant was released, this court issued an order, based on the independent review of the record we conducted in response to the *Wende* (*People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]) brief filed in appellant's behalf, requiring briefing of the question whether Judge Miles and Judge Cissna had any jurisdiction to issue the orders they made in this case. We cannot say with certainty whether there is any connection between our order and appellant's release."

collateral consequences." (*People v. Lindsey* (1971) 20 Cal.App.3d 742, 744 [97 Cal.Rptr. 872].) Appellant, who received a determinate prison term, was sentenced to a term of imprisonment under section 1170. Therefore, under subdivision (b)(1) of section 3000, appellant was "released on parole for a period not exceeding three years," a period which would extend beyond expiration of the period of probation appellant was previously serving. If, during those three years, appellant violated the terms of his parole, he would again be exposed to a state prison sentence. Furthermore, as appellant also points out, if the sentence imposed by Judge Cissna was valid, appellant will now be exposed to a possible future enhancement for a prior prison term. (§ 667.5, subd. (b).) If the sentence was not valid, the prior prison term, though actually served, would not justify an enhancement. (*People v. Tenner* (1993) 6 Cal.4th 559, 567, fn. 3 [24 Cal.Rptr.2d 840, 862 P.2d 840].) In light of these adverse collateral consequences, this case cannot be considered moot.[3] (See, e.g., *People v. Planavsky* (1995) 40 Cal.App.4th 1300, 1305, fn. 8 [47 Cal.Rptr.2d 723]; *People v. Goodson* (1990) 226 Cal.App.3d 277, 280, fn. 2 [277 Cal.Rptr. 60].)

We also reject respondent's contention that appellant has not preserved his jurisdictional claims for appeal because he failed to raise them below. According to respondent, appellant waived his right to assert sentencing error because one of the attorneys representing him at trial agreed with Judge Miles's decision to delay appellant's release on his own recognizance because "there was no structure in place." We think this overstates matters. Deputy Public Defender Michael Eannarino, one of the two attorneys who represented appellant at trial, never expressed agreement with Judge Miles's improper intercession in this case, but merely offered his "initial understanding" of the reason Judge Miles considered it necessary to overrule Judge Neville's release order.[4] Furthermore, respondent completely ignores the lengthy and very vigorous objections of Deputy Public Defender Flower, who also represented appellant at trial. Flower not only claimed that the probation department's successful ex parte effort to induce Judge Miles to cancel Judge Neville's order was "contempt of court," but additionally insisted, and at considerable length, that the frustration of Judge Neville's sentencing orders created "a procedural due process problem here."

---

[3] Except that, because the collateral consequences do not result from Judge Miles's delay of appellant's release on his own recognizance, as ordered by Judge Neville, the propriety of Judge Neville's ruling remains a purely academic issue.

[4] Respondent's brief is replete with suggestions that Judge Neville's ruling was unwise and Judge Miles and Judge Cissna were therefore right to prevent its effectuation. We take no position on the correctness of Judge Neville's sentencing decisions because it is beside the point. There were proper ways in which the prosecution could have sought clarification or reconsideration of Judge Neville's ruling if it thought the ruling ambiguous or unjustified, but it never did so.

Even assuming counsel's objection did not encompass the ground for reversal raised on appeal, "whether or not an appellate court should excuse the lack of a trial court objection 'is entrusted to its discretion.' " (*People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 649 [130 Cal.Rptr.2d 873], quoting *People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6 [69 Cal.Rptr.2d 917, 948 P.2d 429].) Due to the importance of the procedural rights implicated, and because the district attorney should also have objected to the improper frustration of Judge Neville's jurisdiction but did not (see *People v. Abbaszadeh, supra,* 106 Cal.App.4th at p. 649 [prosecutor had a duty both as a law enforcement official and as an attorney to object to an egregious and unlawful instruction]), we would entertain appellant's claim even if he failed to properly object below.

In light of our holding on the direct appeal, we find that the habeas corpus petition is moot.

## DISPOSITION

The judgment is reversed. Judge Cissna's order of February 25, 2002, revoking appellant's probation, sentencing him to state prison, and ordering him to pay restitution in the amount of $800 is vacated and the matter is remanded for sentencing by Superior Court Judge Harold E. Neville, Jr. The petition for writ of habeas corpus is denied.

Haerle, J., and Lambden, J., concurred.

On September 18, 2003, the opinion was modified to read as printed above.