[No. B170558. Second Dist., Div. Eight. Mar. 28, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
SALVADOR MARTINEZ, Defendant and Appellant.

COUNSEL

Diana M. Teran, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Joseph P. Lee and Marc J. Nolan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RUBIN, J.**—Salvador Martinez appeals from the judgment sentencing him to state prison for violating probation. We affirm.

### FACTS AND PROCEDURAL HISTORY

In April 2002, Salvador Martinez pleaded no contest in the San Fernando branch of Los Angeles Superior Court to possession of methamphetamine. (Health & Saf. Code, § 11377.) The court sentenced him under Proposition 36 to three years' probation. (Pen. Code, § 1210 et seq.) In November 2002, he pleaded guilty to a second charge of possession of methamphetamine, and the San Fernando court sentenced him again under Proposition 36 to three years' probation.

In April 2003, Martinez tried to cash at a North Hollywood check cashing store a $492 check to him drawn on the account of "Learning Independence." Nothing on the face of the check suggested anything was amiss. Two years earlier, however, Learning Independence had thrown away a set of blank checks, one of which was the check that Martinez presented. Because the store's cashier thought it odd that Martinez showed his California identification card instead of his driver's license to confirm his identification, she faxed a copy of the check to her company call center. The call center told her the check had been stolen and that the police were on their way. About 15 minutes later, the police arrived and arrested Martinez.

Charged with forgery (Pen. Code, § 470), Martinez was tried in the Van Nuys branch of superior court for violating his probation. The hearing took place on October 6, 2003. He testified he was a commercial truck driver and had received the check for work he did on the side. He explained he had been in downtown Los Angeles when a man named Carlos asked him to deliver supplies to a jobsite Martinez variously described as being at 8th and Main or 3rd and Main. Additionally, Martinez stated at one time or another that the man's name was Carlos, or Juan, or was a group of people whose names he

forgot. The court found Martinez did not write the forged check, but did try to cash it, knowing it was fraudulent. The court therefore found Martinez had violated his probation, and sentenced him to two years in state prison. This appeal followed.

## DISCUSSION

1. *Probation Violation Hearing Properly in Van Nuys*

Martinez objected to the Van Nuys court trying his probation violation. He contends the San Fernando court that had accepted his plea bargains and put him on probation should have heard his probation violation. In support, he cites *People v. Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220] (*Arbuckle*), which entitles a plea-bargaining defendant to insist that the same court that accepts his plea also pass sentence. Courts have not, however, extended *Arbuckle* to probation violations. *People v. Beaudrie* (1983) 147 Cal.App.3d 686 [195 Cal.Rptr. 289], explained "*Arbuckle* gave defendants the right to be sentenced . . . by the same judge who accepted a plea of guilty . . . . [But] there is a distinction between a sentencing hearing following a plea of guilty and a sentencing following a revocation hearing. [The defendant in this case] was sentenced by the same judge who accepted his original plea. Sentence was suspended and he was placed on probation. Once that sentence was imposed, *Arbuckle* no longer applied." (*Id.* at pp. 693–694, italics added; see also *People v. Watson* (1982) 129 Cal.App.3d 5, 8 [180 Cal.Rptr. 759] [rejected as "absurd" argument that "if probation is revoked years after the bargain is kept and sentence technically imposed for the first time, [the defendant] is entitled to have the same judge who accepted the plea impose 'the sentence.' "].)

■ Courts have not extended *Arbuckle* to probation violation hearings, nor should they. Multi-judge superior courts act as one superior court. (*Silverman v. Superior Court* (1988) 203 Cal.App.3d 145, 150–151 [249 Cal.Rptr. 724]; Cal. Const., art. 6, § 4.) Even if a superior court creates departments for administrative ease and judicial efficiency, the departments ordinarily operate under the presumption that they are jurisdictionally equivalent and fungible. *Arbuckle*, resting on contract principles, created a limited exception to the fungibility of superior court departments. It did not, however, ground itself in constitutional or statutory mandates, speaking instead of the defendant's expectations and reliance on the plea bargain's implied terms. (*Arbuckle, supra,* 22 Cal.3d at pp. 756–757.) Because *Arbuckle* did not rest on constitutional or statutory law, we may weigh *Arbuckle's* reasoning against the practical concerns of sentencing outside a plea bargain.

We find those reasons wanting. When a probationer commits a new offense, often many months, or even years, may have passed since the original offense. The remoteness in time between the original offense and the new offense creates a lower expectation that—unlike at the time of the plea bargain—the original sentencing judge will still be available, let alone hearing criminal matters. Practical problems abound. For example, criminal hearings implicate courthouse security. The original sentencing judge may have moved to another assignment in a courtroom not equipped to handle a prisoner in custody. For that judge to hear the new offense, he or she would likely need to relocate to another courtroom, perhaps in another court branch, with his or her staff in tow. The burdens of such a relocation, and its disruption to the rest of the court's calendar, are obvious. And to what end? Oftentimes it will stand to the reoffending defendant's benefit to have one judge handle both the new offense and the probation violation, because it makes a global disposition of the offenses more likely. But if the probation violation is split from the new offense and returned to the original sentencing judge, the defendant's chances of a global settlement may evaporate.

We acknowledge that *Arbuckle* said that "mere administrative convenience" should not be used to thwart the reasonable expectation of a defendant in having his or her sentence imposed by the judge before whom the plea was entered. (*Arbuckle, supra,* 22 Cal.3d at p. 757, fn. 5.) *Arbuckle* was addressing the relatively minor inconvenience in those situations where the trial judge had been reassigned a few weeks after the plea was taken, and then must be reassigned to impose sentence. That is not the case here, where the probation violation hearing was held 18 months after the plea. *Arbuckle* did not consider the security and administrative problems encountered when a trial judge long since reassigned out of a criminal courtroom is compelled to sentence dozens or even hundreds of defendants previously placed on probation. We agree with the court in *People v. Watson, supra,* 129 Cal.App.3d at page 8, that any expectation a defendant might have that the original judge would sentence him in that situation, is unreasonable.

Martinez's reliance on *People v. Ellison* (2003) 111 Cal.App.4th 1360 [4 Cal.Rptr.3d 713], is unavailing. *Ellison* involved three judges. The first judge accepted the defendant's plea, but told the defendant he would be unavailable to impose sentence. Accordingly, the defendant waived his *Arbuckle* rights and agreed to be sentenced by a second judge. (*Id.* at p. 1363.) At the sentencing hearing, the second judge ordered the defendant's immediate release from jail pending a final probation report. The jail did not release the defendant, however, because "someone at the jail" contacted a third judge and asked that judge to put a "hold" on the defendant. (*Id.* at p. 1364.) The

defendant's case thereafter returned to the first judge, who withdrew the second judge's release order and ordered the defendant's imprisonment. (*Id.* at p. 1366.) On appeal, the defendant challenged his imprisonment, arguing the first judge had no jurisdiction to countermand the second judge's release order. The *Ellison* court agreed, holding the first and third judges overstepped their authority by interfering with the second judge's release order. (*Id.* at p. 1367.) The *Ellison* court explained that each county's superior court sits as one court, even if it is divided into different departments and courtrooms for administrative ease and practical necessity. As the various departments sit as "one court," orders entered in one department are binding on all departments. (*Id.* at p. 1366.) Hence, the first and third judges had no authority to overrule the second judge. Although *Ellison's* procedural history involved the defendant's *Arbuckle* rights—for without an *Arbuckle* waiver the second judge would not have obtained jurisdiction—the *Ellison* court's analysis did not involve application of *Arbuckle*, other than to note the *Arbuckle* waiver was needed to vest jurisdiction with the second judge. *Ellison* did not hold, as Martinez contends, that *Arbuckle* rights extend to probation violation hearings.

### 2. *Sufficiency of the Evidence*

■ Intent to defraud is an element of forgery. (Pen. Code, § 470; CALJIC No. 15.02.) Possession of a forged check is, by itself, some evidence of forgery. Combined with some corroborative evidence, however slight, possession of a forged check is enough to support a conviction for forgery. (*People v. Reisdorff* (1971) 17 Cal.App.3d 675, 679 [95 Cal.Rptr. 224].)

Martinez contends there was insufficient evidence to conclude he had committed forgery. He notes he did not write or sign the check, and there was nothing suspicious on the face of the check to suggest it was invalid. Moreover, he made no attempt to misrepresent himself or hide his identity, as he presented valid identification when he tried to cash the check.

■ Preponderance of the evidence, a lower threshold than needed to support a new criminal conviction, is the standard of proof for a probation violation. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 440–441, 447 [272 Cal.Rptr. 613, 795 P.2d 783].) Against his evidence suggesting innocence weighed Martinez's admission that he had not heard of "Learning Independence," the company on whose account his check was drawn. Moreover, no obvious connection existed between that company and the jobsite in downtown Los Angeles. Finally, Martinez made inconsistent statements about who approached him and the jobsite's location. Such shifting or inconstant

testimony presumably aroused the trial court's suspicion, undercutting Martinez's credibility with the court. Because we cannot second-guess the trial court's credibility findings, we are obligated to assume the court disbelieved Martinez's testimony that he did not know the check was forged. Accordingly, there was sufficient evidence to prove Martinez had violated his probation.

### 3. *Prison Instead of Probation*

Proposition 36 ordinarily mandates reinstatement of probation the first two times a defendant violates a drug-related condition of probation. (*In re Taylor* (2003) 105 Cal.App.4th 1394, 1397 [130 Cal.Rptr.2d 554].) Because his forgery offense was only his second probation violation (the first being his second methamphetamine conviction), Martinez contends the court erred in revoking his probation and sending him to prison.

■ Martinez's contention is unavailing because it is only if the probation violation is "drug related" that the prohibition against incarceration arises. (*In re Taylor, supra,* 105 Cal.App.4th at p. 1398.) Proposition 36 defines "drug-related condition of probation" as "a probationer's specific drug treatment regimen, employment, vocational training, educational programs, psychological counseling, and family counseling." (Pen. Code, § 1210.1, subd. (f).) Passing a bad check does not fall within that definition. (Compare *In re Taylor, supra,* 105 Cal.App.4th 1394 [not appearing for drug test is drug-related violation].)

Martinez cites *People v. Atwood* (2003) 110 Cal.App.4th 805 [2 Cal.Rptr.3d 67], to argue the People must prove his reason for cashing the check was *not* drug related. *Atwood* imposes no such burden on the People. In *Atwood*, the probationer violated probation by missing an appointment with his probation officer. Because the reason for the appointment was unclear, the People could not show the probationer had violated a non-drug-related condition of probation; *Atwood* noted, for example, that if the appointment had been to take a drug test, the violation would have been drug related. (*Id.* at pp. 808, 811–812, citing *In re Taylor, supra,* 105 Cal.App.4th 1394.) Cashing a check allows for no such possibility here. Even if Martinez had planned to buy drugs with the check proceeds, the offense would not have been drug related as Proposition 36 defines that term. (Pen. Code, § 1210.1, subd. (f) [drug-related condition of probation is a "specific drug treatment regimen, employment, vocational training, educational programs, psychological counseling, and family counseling."]; accord *People v. Canty* (2004) 32 Cal.4th 1266, 1279–1280, 1285 [14 Cal.Rptr.3d 1, 90 P.3d 1168] [driving under the influence does not satisfy Proposition 36's definition of drug-related misdemeanor even if the intoxicant is a drug].)

## DISPOSITION

The judgment is affirmed.

Cooper, P. J., and Boland, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 29, 2005.