Filed 6/30/25  P. v. Green CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LACEY KARY GREEN,<br><br>    Defendant and Appellant. | G063910<br><br>(Super. Ct. No. RIF2205655)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of Riverside County, Walter H. Kubelun, Judge. Affirmed in part, reversed in part, and remanded with directions.

        John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette

C. Cavalier and Emily Reeves, Deputy Attorneys General, for Plaintiff and Respondent.

*     *     *

After a jury convicted defendant Lacey Kary Green on four counts involving unlawful sexual related behavior with a minor, the trial court sentenced him to an aggregate determinate prison term of three years and four months. Green contends the court erred by subjecting him to unlawful multiple punishment in violation of Penal Code section 654.[1] We find no merit in Green's challenge to the sentence on two of the counts. In contrast, the Attorney General concedes, and we agree, two of the counts could not be separately punished because they were based on the same acts, intent, and objectives. Accordingly, we vacate the sentence and remand the case for resentencing.

FACTS

Prior to the events leading to his conviction, Green created a user profile on an online dating platform called "MeetMe." The profile included his picture and listed him as being 39 years old.

One day, Green sent a message on MeetMe to a profile with the name of Destiny. Unbeknownst to him, law enforcement created and controlled the profile. Destiny was listed as being 18 years old and the picture associated with the profile was of a 12- to 14-year-old girl. In response to Green's message, Destiny identified herself as 13 years old and said she was on MeetMe to meet friends. The two exchanged some additional messages over the course of an hour and then exchanged phone numbers. Shortly thereafter, Green reached out to Destiny via text message saying he

---

[1] All further statutory references are to the Penal Code.

2

"wish[ed] [she] was older." She responded saying they could "watch a movie and chill." Green asked for an additional picture of her; Destiny sent a different picture of the same 12- to 14-year-old girl. Green told her she was "so pretty" and sent her two pictures of himself.

A couple days later, Green messaged Destiny and told her she had pretty eyes. They exchanged additional messages, and Green eventually asked her if she had "done anything sexual" with guys or herself. She responded she had not, and Green said he assumed she had not but was just asking.

Over the course of the next week, Green sent multiple messages to Destiny and she responded to some. In one set of messages, Green asked Destiny if she "had ever taken a sexy pic" or a "naked pic." When she inquired why he asked about a naked picture, Green said it was "[b]ecause [he] was going to ask for one." No pictures were sent.

In another message on a different day, Green conveyed he "wish[ed] one day [they] could see each other." The text message conversation continued, and at various points Green conveyed the following to Destiny: "I know I just want to kiss you"; "I just want to make you feel good"; "I want to touch your pussy and have sex with you. That's my plan." They agreed to meet up the following day, but that meeting did not take place for logistical reasons on law enforcement's end.

Two days after the first scheduled meetup, Green messaged Destiny asking if they could meet the following Friday—a little over a week away—and she agreed to meet him in person. Before that day came, they exchanged text messages about condoms. Green said, "I can't have kids so we don't need one, and it's better without trust [*sic*]." The second scheduled in-

person meetup did not occur because Green was going to be late due to work and Destiny indicated she could not do the later time.

During the following week, prompted by questions from Green if they could make plans to meet, he and Destiny agreed once again to try to meet in person. They agreed to meet at a certain fast food restaurant in the City of Riverside. At Destiny's request, he said he would bring her a certain soda and try to bring her donuts. He asked her if she was "ready to have sex."

On the day of the third scheduled in-person meetup, Green arrived at the agreed upon location at the agreed upon time. Law enforcement effectuated a traffic stop and arrested him. A search of his vehicle revealed a cold soda of the type Destiny requested.

A complaint charged Green with the following: unlawfully contacting or communicating with a minor (§ 288.3, subd. (a); count 1); unlawfully arranging a meeting with a minor (§ 288.4, subd. (b); count 2); attempting to use a minor to perform prohibited acts (§§ 311.4, subd. (c), 664; count 3); and attempting lewd acts with a child (§§ 288, subd. (a), 664; count 4).

A jury convicted Green on all counts. The trial court sentenced him to a total of three years and four months in prison, consisting of two years on count 2, a consecutive one-year term on count 1, a consecutive four-month term on count 3, and a concurrent term of 18 months on count 4.

Green timely appealed.

DISCUSSION

Green's arguments on appeal solely concern the imposed sentence. He contends the trial court erred in imposing terms for each count without staying any of them pursuant to section 654. From his perspective, the sentence on counts 1, 3, and 4 should have been stayed because he "had a

4

single intent and objective for all four crimes." We conclude section 654 precluded Green from being separately punished on counts 2 and 4 only.

Section 654 "prohibits the imposition of punishment for more than one violation arising out of an 'act or omission' which is made punishable in different ways by different statutory provisions." (*People v. Beamon* (1973) 8 Cal.3d 625, 636, fn. omitted (*Beamon*).) Its application generally requires evaluating two aspects of the particular circumstances in a case. One aspect concerns whether the violations arise out of a singular act. (*Id.* at p. 637.) In the context of section 654, singular not only means one act in the ordinary sense, but also "a course of conduct deemed to be indivisible in time." (*Beamon, supra*, 8 Cal. 3d. at pp. 637, 639, fn. omitted.) The other aspect concerns the defendant's objective and intent. (*Id.* at p. 638.) The focus is whether the defendant entertained multiple criminal objectives which were independent of each other, or instead had a sole principal objective to which other objectives, if any, were merely incidental. (*Id.* at p. 639.)

Through evaluation and application of these factors, case law has established certain overarching, interrelated principles. First, "where a course of conduct is divisible in time it may give rise to multiple punishment even if the acts are directive to one objective." (*People v. Louie* (2012) 203 Cal.App.4th 388, 399 (*Louie*).) Second, "[i]f the separation in time afforded [a] defendant[ ] an opportunity to reflect and to renew their intent before committing the next crime, a new and separate crime is committed." (*Ibid.*) Third, "[i]f [a defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, [they] may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*Beamon, supra*, 8 Cal.3d at p. 639.)

Here, the trial court found "none of the convictions rise out of the same set of operative facts. The defendant was convicted of four counts, each count being a separate action and occurring on different dates; therefore, [section] 654 does not apply."[2] We review the court's determination about the separate nature of the acts for substantial evidence and consider the evidence in the light most favorable to the judgment. (*People v. Cardenas* (2015) 239 Cal.App.4th 220, 226; *People v. Williamson* (1979) 90 Cal.App.3d 164, 172.)

With respect to count 2, the jury found Green unlawfully went to an arranged meeting with a minor with the intent to engage in a lewd act. Consistent with the prosecutor's closing argument and the jury instructions, the offense was based on Green arranging to meet, and going to meet, Destiny in person at a particular location on the day he ultimately was arrested, for the purpose of engaging in sexual acts.

Substantial evidence supports the trial court's conclusion that count 1, communicating with a minor to commit lewd and lascivious acts, and count 3, attempting to use a minor to perform prohibited acts, were each based on a different set of acts than count 2, and were also not based on the same acts as one another. Before Green arranged and went to meet Destiny in person, he communicated with her over a period of several weeks. On the first day, he learned Destiny was 13 years old. And early on, his messages to her conveyed his intent to engage in sexual acts with her. Those messages, related to count 1, took place long before Green set up the in-person meeting with Destiny which led to his arrest. The temporal separation allowed Green

_____

[2] Green made no section 654 argument below, but none was required to preserve the issue for appeal. (*People v. Kelly* (2018) 28 Cal.App.5th 886, 903.)

6

to reflect and renew his intent, meaning his actions were not one indivisible course of conduct. (See *Louie, supra*, 203 Cal.App.4th at p. 399.) The same is true with respect to Green's attempts to get Destiny to send him naked pictures of herself, the acts on which count 3 was based.

Green argues he "had a single intent and objective for all four crimes." Even assuming he had a sole intent and objective of sexual gratification, that does not preclude multiple punishment. (See *People v. Perez* (1979) 23 Cal.3d 545, 552–553.) "Assertion of a sole intent and objective to achieve sexual gratification is akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts. To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to insure [*sic*] a defendant's punishment will be commensurate with [their] culpability. [Citation.] It would reward the defendant who has the greater criminal ambition with a lesser punishment." (*Id.* at p. 552.)

As for count 4, attempting to commit a lewd or lascivious act on a child under 14 years old, the Attorney General concedes Green could not be separately punished for it and count 2. We agree. As the prosecutor argued in closing, "this ties everything together." All the text messages with Destiny evidenced Green's intent and, as the prosecutor argued, his act of driving to the agreed upon meeting point was the culminating act of all his preparatory work establishing the attempt. With count 4 being based on the same acts, intent, and objectives, as count 2, Green could not be punished for both.

The identified error requires a remand for resentencing. As of January 2022, when faced with two counts which cannot be separately punished, section 654 vests a trial court with discretion to choose which term to impose and execute, and which term to impose and stay. And because the

court's calculus in that respect may impact other discretionary aspects of sentencing, a full resentencing is appropriate.[3] (See *People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Codinha* (2023) 92 Cal.App.5th 976, 994.)

DISPOSITION

The conviction is affirmed, the sentence is vacated, and the case is remanded for resentencing. Upon completion of the new sentencing hearing the trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


DELANEY, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


MOTOIKE, J.

---

[3] Based on the date of Green's original sentencing, the aggregate sentence, and the credit he received for time served, it is unclear if Green has finished serving his sentence. Neither party brings our attention to that issue. Out of an abundance of caution, because even a completed sentence may have disadvantageous collateral consequences depending on the circumstances (see *People v. Ellison* (2003) 111 Cal.App.4th 1360, 1368–1369), we find a remand for resentencing to be appropriate.